**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **NEW CENTURY FOUNDATION,** | Case No. 3:18-cv-00839 |
| and | Hon. Aleta A. Trauger |
| **SAMUEL JARED TAYLOR,** | |
| Plaintiffs, | |
| v. | |
| **MICHAEL ROBERTSON,** *In his official capacity as director of Tennessee Department of Environment and Conservation,* | |
| Defendant. | |

## PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

NOW COMES New Century Foundation (d/b/a American Renaissance) ("NCF") and Samuel Jared Taylor ("Taylor") (NCF and Taylor collectively "Plaintiffs"), by and through their attorney, and hereby propounds upon Michael Robertson ("Defendant") and this Honorable Court Plaintiffs' Emergency Motion for a Preliminary Injunction:

1.  Pursuant to LR7.01(a)(1), on September 17, 2018, the undersigned attorney emailed the attorneys of record for Defendant—Dawn Jordan (dawn.jordan@ag.tn.gov), Jay Ballard (jay.ballard@ag.tn.gov), and Sara Ohlman (sara.ohlman@ag.tn.gov)—to seek concurrence for the relief prayed for herein, but said concurrence was not obtained. Furthermore, said relief was also requested of—and denied by—Attorney Brian Clifford, who represented Defendant prior to the instant civil action being filed. (PageID.17).

2. Pursuant to LR65.01(d), Plaintiffs hereby respectfully request that an emergency hearing be scheduled to occur for the instant Motion insofar as Plaintiffs will suffer injury to their First and Fourteenth Amendment guaranteed free speech rights if delay occurs. Plaintiffs' request for a preliminary injunctive order is time-sensitive, because Plaintiffs have already announced the location and date of the planned May 2019 conference—which Defendant's conduct is preventing from occurring in a manner that comports with constitutional requirements. Because Plaintiffs were unwilling to agree to a contract that includes unconstitutional language, meeting rooms and sleeping rooms at the conference have been put on the market for other people to rent, and if the rooms are rented before the date of the conference, Plaintiffs will be unable to hold their conference. If Plaintiffs are not able to rent the entire Montgomery Bell Inn & Conference Center, then protesters could deliberately rent some of the available sleeping rooms so as to illicitly gain access to the conference to unlawfully disrupt it and to harass the attendees of the conference. See, e.g., *McCalden v. California Library Assoc.*, 955 F.2d 1214 (9th Cir. 1990) (describing an incident in which a controversial speaker's First Amendment rights were violated when protesters rented a room adjacent to the room rented by the speaker at a public library so as to disrupt his presentation).

3. For the reasons set forth in Plaintiffs' Brief in Support of Plaintiffs' Emergency Motion for a Preliminary Injunction, the Court should grant Plaintiffs a preliminary injunction whereby Defendant is ordered to permit Plaintiffs to rent all the facilities at the Montgomery Bell Inn & Conference Center between May 17 and 19, 2019, to host Plaintiffs' proposed annual conference without Plaintiffs being required to pay costs associated with police protection or damage caused by protesters.

2

WHEREFORE, Plaintiffs pray that this Honorable Court will grant Plaintiffs a preliminary injunction whereby Defendant is ordered to permit Plaintiffs to rent all the facilities at the Montgomery Bell Inn & Conference Center between May 17 and 19, 2019, to host Plaintiffs' proposed annual conference without Plaintiffs being required to pay costs associated with police protection or damage caused by protesters.

Respectfully submitted,


/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Attorney for New Century Foundation and*
*Samuel Jared Taylor*

Dated: September 18, 2018

3

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **NEW CENTURY FOUNDATION,** | Case No. 3:18-cv-00839 |
| and | Hon. Aleta A. Trauger |
| **SAMUEL JARED TAYLOR,** | |
| Plaintiffs, | |
| v. | |
| **MICHAEL ROBERTSON,** *In his official capacity as director of Tennessee Department of Environment and Conservation,* | |
| Defendant. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I. INDEX OF AUTHORITIES ................................................................................................ i

II. STATEMENT OF ISSUE PRESENTED ........................................................................... 1

III. STANDARD OF REVIEW .............................................................................................. 1

IV. STATEMENT OF FACTS ............................................................................................... 2

V. LAW & ARGUMENT ...................................................................................................... 9

    A. PLAINTIFFS ARE BEING INJURED IN A MANNER FOR WHICH THEY HAVE NO ADEQUATE LEGAL REMEDY .................................................................. 9

    B. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS ..................................... 10

    C. PLAINTIFFS WOULD SUFFER IRREPARABLE INJURY IF THE COURT DOES NOT GRANT THE REQUESTED PRELIMINARY INJUNCTION .................. 11

    D. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION WOULD NOT CAUSE SUBSTANTIAL HARM TO DEFENDANT OR THIRD-PARTIES TO THE INSTANT CIVIL ACTION ............................................................. 12

    E. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST ................................................................................................ 13

VI. CONCLUSION ............................................................................................................... 13

# I. INDEX OF AUTHORITIES

**CASE LAW**

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992) .....................................11

*Bible Believer's v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) ....................................5-7, 10

*Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir. 2006) ............................................12

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) ...........................................11

*Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107 (6th Cir. 2001) ................1-2

*Elrod v. Burns*, 427 U.S. 347 (1976) .............................................................................11

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992)...............................5-7, 10, 12

*McCalden v. California Library Assoc.*, 955 F.2d 1214 (9th Cir. 1990)................................8

*McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460 (6th Cir. 2006)...........................................10

*Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828, (W.D. Mich. 1998) ............................................................................................1

*Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008) .............................................7

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ...............................................................10

*Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566 (6th Cir. 2002)..........1, 11

*Samuel v. Herrick Memorial Hospital*, 201 F.3d 830 (6th Cir. 2000)....................................1, 7

*Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393 (6th Cir. 1997) .............1

*Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973) .................................................................6

*Solid Rock Foundation v. Ohio State University*, 478 F.Supp. 96 (S.D. Ohio 1979) ...........2, 7

*Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010)................................................................5, 10

**STATUTORY AND CONSTITUTIONAL LAW**

28 U.S.C. § 1331 ..............................................................................................3

28 U.S.C. § 1391(b)(2) ......................................................................................3

i

28 U.S.C. § 1343 ..................................................................................................................3

28 U.S.C. § 2201 ..................................................................................................................3

42 U.S.C. § 1983..........................................................................................................2-3, 10

First Amendment to the United States Constitution ......................................................2, 7-13

Fourteenth Amendment to the United States Constitution ..........................................2, 7, 9-10

**COURT RULES**

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................................................3

Fed. R. Civ. P. 65 .............................................................................................................1, 7

Tenn. Code Ann. § 20-2-223 ..............................................................................................3

## II.  STATEMENT OF ISSUE PRESENTED

1.  Whether the Court should grant Plaintiffs a preliminary injunction whereby Defendant is ordered to permit Plaintiffs to rent all the facilities at the Montgomery Bell Inn & Conference Center between May 17 and 19, 2019, to host Plaintiffs' proposed annual conference without Plaintiffs being required to pay costs associated with police protection or damage caused by protesters.

Plaintiffs' Response:     Yes.

Defendant's Anticipated Response:   No.

## III.  STANDARD OF REVIEW

Injunctive relief can be awarded by the Court pursuant to Fed. R. Civ. P. 65.

Injunctive relief is "an extraordinary remedy which should be granted only if * * * the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  To obtain injunctive relief, a party must first show that he "is being threatened by some injury for which he has no adequate legal remedy."  *Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107, 1118 (6th Cir. 2001) (citations omitted).  If such is the case, the court must then examine four different factors:  (1) whether the movant is likely to prevail on the merits, (2) whether the movant would suffer irreparable injury if the court does not grant the injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether a preliminary injunction would be in the public interest.  See *Samuel v. Herrick Memorial Hospital*, 201 F.3d 830, 833 (6th Cir. 2000).

Rather than prerequisites which must each be satisfied, the relevant factors—none of which are dispositive—are competing considerations to be weighed and balanced.  See *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400 (6th Cir. 1997); *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828, 831 (W.D. Mich.

1

1998). Ultimately, the decision whether to grant injunctive relief is within the court's discretion. See *Dana Corp.*, 251 F.3d at 1118.

The Court's attention is directed to *Solid Rock Foundation v. Ohio State University*, 478 F.Supp. 96 (S.D. Ohio 1979), which uses Sixth Circuit and Supreme Court case law to decide whether a preliminary injunction should issue for a First Amendment-related case.

## IV. STATEMENT OF FACTS

The averments of fact and legal authorities set forth within Plaintiffs' Verified Complaint are incorporated by reference as if fully set forth herein—which is inclusive of the two exhibits which were attached to said Verified Complaint. (Exhibit A – Plaintiffs' Verified Complaint; PageID.1-17). The following averments of fact come from Plaintiffs' Verified Complaint:

New Century Foundation (d/b/a American Renaissance) ("NCF") and Samuel Jared Taylor ("Taylor") (NCF and Taylor collectively "Plaintiffs") are suing Michael Robertson ("Defendant")—by invoking 42 U.S.C. § 1983—for Defendant having violated Plaintiffs' right to free speech—as guaranteed to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution—by requiring Plaintiffs to pay an unconstitutional security fee to ensure public safety and to be required to pay for damage caused by protesters if Plaintiffs elect to rent publicly available rooms at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests.

Taylor is an adult natural person who is domiciled in the Commonwealth of Virginia. He is the president of NCF and a frequent speaker at private and public events about issues concerning European heritage, culture, and interests.

NCF is a trust established in the Commonwealth of Kentucky on October 1, 1993, for charitable and educational purposes. Since May 30, 1997, it has been authorized to transact business in the Commonwealth of Virginia, which is where it is headquartered. NCF publishes materials about European heritage, culture, and interests, and it maintains a website at <www.amren.com>.

Defendant is an adult natural person who serves as the director of the Tennessee State Park Operations at the Tennessee Department of Environment and Conservation. Defendant is sued in his official capacity only as an agent of the Tennessee Department of Environment and Conservation. At all times relevant to the instant controversy, Defendant acted under the color of state law. Defendant is, upon information and belief, ultimately responsible for all policies enacted and enforced at Montgomery Bell Inn & Conference Center—including the unconstitutional policies at issue in the instant civil action.

This Court enjoys subject matter jurisdiction over the instant civil action because the controversy involves a federal question about Plaintiffs' constitutional right to free speech being violated by Defendant. 28 U.S.C. §§ 1331, 1343, 2201; 42 U.S.C. § 1983; U.S. Const. amend. I; U.S. Const. amend. XIV.

The Court enjoys personal jurisdiction over Defendant because Defendant is subject to the jurisdiction of a court of general jurisdiction within the State of Tennessee since Defendant is located in the State of Tennessee and Defendant did and caused actionable injury to Plaintiffs in the State of Tennessee. Fed. R. Civ. P. 4(k)(1)(A); Tenn. Code Ann. § 20-2-223.

Venue is appropriate with this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Court's jurisdictional district. 28 U.S.C. §

1391(b)(2). Specifically, the Montgomery Bell State Park Inn & Conference Center Plaintiffs would like to rent is located at 1000 Hotel Ave., Burns, TN 37029.

Since 2012, NCF has annually rented facilities at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers discuss matters concerning European heritage, culture, and interests. As the figurehead of NCF, Taylor speaks at these weekend-long, suit-and-tie conferences, which are attended by peaceful and law-abiding individuals who support Plaintiffs' views.

Montgomery Bell Inn & Conference Center is available to the public to rent, and it is owned and/or operated by the Tennessee Department of Environment and Conservation—which is a governmental actor.

Due to the subject matter of the speech and the viewpoint espoused by Plaintiffs, people who disagree with the content and viewpoint of Plaintiffs' conferences protest them. Defendant has historically provided police protection in order to maintain order at Plaintiffs' conferences.

Plaintiffs are planning to host a conference May 17 to May 19, 2019, at Montgomery Bell Inn & Conference Center. It is their intention, as has been the case every year for the past five years, to reserve not only the meeting hall but all of the sleeping room available to the public at the conference center. Plaintiffs make their reservations well in advance of the date of the conference with the specific intent of securing the entire facility.

When Plaintiffs attempted to reserve the Montgomery Bell Inn & Conference Center for their May 2019 conference, a slightly revised contract from previous years was provided to them which would additionally require Plaintiffs to be financially responsible for the cost of security to ensure public safety and any damage caused by protesters. On the third page of said contract is the following pertinent term:

4

<u>Refundable Security Deposit</u>:  in addition to the reservation deposit, a cash, check, or credit card deposit equal to 10% of the expected balance, including any anticipated catering costs and fees, is required for group reservations.  This deposit is due at least 30 days prior to the reservation arrival date and is intended to cover expenses that TDEC may reasonably incur because of the group's reservation and use of or attendance at the state park.  The park will hold this deposit as a security deposit to be applied toward: 1) **any damage-repair costs** or ancillary fees and charges assessed to the group or its members or affiliates **due to issues related to the use** of the park or its equipment and/or **facilities**, including park restoration following the group's use; 2) reasonably required state staff expenses that exceed typical staffing expenses for the facility, including event monitoring, set-up, take-down, or **security to ensure public safety**; 3) use of additional facilities; and/or 4) **any other costs above normal operating expenses reasonably resulting from the group's use of or attendance at the state park**.

The parties agree that the Park may assess reasonable fees or charges above the security deposit, should the security deposit be insufficient to cover the expenses listed above.  This policy excludes TN State and TN University group reservations.

(Emphasis added.)

The requirement for Plaintiffs to pay for security to ensure public safety at Plaintiffs' conference constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because it authorizes Defendant to "examine the content of the message conveyed, estimate the public response to that content, and judge the number of police necessary to meet that response."[1]  See *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 123-124 (1992); see also *Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010); *Bible Believer's v. Wayne County*, 805 F.3d 228, 247 (6th Cir. 2015).

The requirement that Plaintiffs be responsible for damage caused by protesters constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because

---

[1] The discrimination is palpable if one employs the Birthday Party Test:  the question presented is whether the cost for police protection would be different if Plaintiffs were hosting a similarly sized birthday party on the same date, time, and location as its European interests-themed conference.  If the cost for police protection is different, then there is content and/or viewpoint discrimination.

5

it permits a hostile mob to damage property in order to impose a speech tax against Plaintiffs for exercising their constitutionally-guaranteed right to free speech. Plaintiffs cannot be financially burdened based even in part upon the community's hostile reaction to Plaintiffs' speech. See *Forsyth County*; *Bible Believer's*; *Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973) ("[S]tate officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights.").

Prior to filing suit, Plaintiffs requested that Defendant not require Plaintiffs to be contractually responsible for security fees to ensure public safety or damage caused by protesters, but Defendant refused. Plaintiffs are ready, willing, and able to enter into the contractual agreement with Defendant, but for the unconstitutional contractual terms complained of within this Complaint.

Upon information and belief, there is an alarming trend in the United States of America in which politically right-of-center events require costly security measures to be utilized to try to prevent left-of-center protesters from causing property damage or personal injury to the event venues and people who are sympathetic to the speakers' views. For example, approximately $600,000.00 was planned to be spent by the University of California-Berkeley for security for a brief speech by conservative commentator Ann Coulter,[2] the University of California-Berkeley spent approximately $600,000.00 for security for a brief speech by conservative commentator Ben Shapiro,[3] and the University of California-Berkeley planned to spend upwards of

---

[2] Schellong, Megan. "Here's how much security costs when an incentiary speaker comes to campus." <http://college.usatoday.com/2017/09/13/heres-how-much-security-costs-when-an-incendiary-speaker-comes-to-campus/>. 13 September 2017.

[3] Gecker, Jocelyn. "The Cost of Free Speech Isn't Cheap at UC Berkeley." <https://www.usnews.com/news/politics/articles/2017-09-14/uc-berkeley-under-tight-security-for-conservative-speaker>. 15 September 2017.

6

$1,000,000.00 for a brief speech by conservative commentator Milo Yiannopoulos.[4] If security costs could be passed on in whole or in part by governmental actors to event organizers who espouse politically right-of-center ideas like those espoused by Plaintiffs, Ben Shapiro, Ann Coulter, or Milo Yiannopoulos, then such would result in *de facto* censorship insofar as fewer— or no—such events could occur in the United States of America due to the massive security costs that are directly and proximately a result of the reaction of a hostile community.

Plaintiffs are guaranteed the right to free speech pursuant to the First and Fourteenth Amendments to the United States Constitution.

Defendant has violated Plaintiffs' right to free speech by requiring Plaintiffs to pay an unconstitutional security fee to ensure public safety and to be required to pay for damage caused by protesters if Plaintiffs elect to rent publicly available rooms at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests. Such requirements constitute unconstitutional content discrimination and viewpoint discrimination for unconstitutionally overly broad policies which directly and proximately result in an unconstitutional prior restraint on speech.

Due directly and proximately to Defendant having violated Plaintiffs' right to free speech, Plaintiffs have and will continue to suffer injuries.

The Court can and should issue a preliminary injunctive order against Defendant whereby Defendant is ordered to permit Plaintiffs to rent publicly available rooms at Montgomery Bell Inn & Conference Center without requiring Plaintiffs to pay for the cost of security fees to ensure

---

[4] Lerner, Kira. "Berkeley plans $1 million spend on security for Milo Yiannopoulos' event amid massive budget cuts." <https://thinkprogress.org/berkeley-free-speech-cost-c140085b8cc0/>. 22 September 2017.

7

public safety or damage caused by protesters. See Fed. R. Civ. P. 65; *Bible Believers*; *Forsyth County*; *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (describing elements for injunctive relief to be awarded); *Samuel*, 201 F.3d at 833 (describing factors to be considered when deciding whether injunctive relief should be awarded); *Solid Rock Foundation* (using Sixth Circuit and Supreme Court case law to decide whether a preliminary injunction should issue for a First Amendment-related controversy).

Plaintiffs' request for a preliminary injunctive order is time-sensitive, because Plaintiffs have already announced the location and date of the planned May 2019 conference. Because Plaintiffs were unwilling to agree to a contract that includes unconstitutional language, meeting rooms and sleeping rooms at the conference have been put on the market for other people to rent, and if the rooms are rented before the date of the conference, Plaintiffs will be unable to hold their conference. If Plaintiffs are not able to rent the entire Montgomery Bell Inn & Conference Center, then protesters could deliberately rent some of the available sleeping rooms so as to illicitly gain access to the conference to unlawfully disrupt it and to harass the attendees of the conference. See, e.g., *McCalden v. California Library Assoc.*, 955 F.2d 1214 (9th Cir. 1990) (describing an incident in which a controversial speaker's First Amendment rights were violated when protesters rented a room adjacent to the room rented by the speaker at a public library so as to disrupt his presentation).

It should be noted that Plaintiffs are not the only victims of Defendant's unconstitutional policy to impose a speech tax against organizations which espouse controversial viewpoints by requiring said organizations to incur additional costs due to the community's hostile reaction to said viewpoints: Rick Tyler is affiliated with the American Freedom Party, which was invoiced

a whopping $21,057.69 for police protection for a conference at the Montgomery Bell State Park

as recently as June of 2018. Says Mr. Tyler in an affidavit:

> I am involved with the American Freedom Party, which is a political party that, among other things, promotes the interests of European-Americans.
>
> Between June 15, 2018, and June 17, 2018, the American Freedom Party rented facilities at the Montgomery Bell State Park for a conference.
>
> I was personally involved with the American Freedom Party entering into the contract with the Department of Environment and Conservation (Tennessee State Parks) to rent the Montgomery Bell State Park for a conference in June of 2018. Attached to this affidavit is a true and accurate copy of the contract entered into by and between the American Freedom Party and the Department of Environment and Conservation (Tennessee State Parks).
>
> People who disagree with the political viewpoint of the American Freedom Party sometime protest its events—which necessitates police protection even though the American Freedom Party and its speakers and members are overwhelmingly law-abiding.
>
> By letter dated July 27, 2018, the American Freedom Party received an invoice in the amount of $21,057.69 due to police protection which was apparently incurred by the Department of Environment and Conservation (Tennessee State Parks) to protect the attendees of the June 2018 American Freedom Party conference from hostile protesters. Attached to this affidavit is a true and accurate copy of the July 27, 2018, invoice.
>
> The $21,057.69 costs for police protection which was needed due to the hostile community's reaction to our First Amendment-protected political ideas is not insignificant and it will have a chilling effect on the American Freedom Party's ability to have future conferences at the Montgomery Bell State Park.
>
> Had the American Freedom Party not espoused views which some people find to be objectionable, it is inconceivable that the American Freedom Party would have incurred anything close to $21,057.69 as costs for police protection.

(Exhibit B – Affidavit of Rick Tyler).

## V. LAW & ARGUMENT

### A. PLAINTIFFS ARE BEING INJURED IN A MANNER FOR WHICH THEY HAVE NO ADEQUATE LEGAL REMEDY

9

Plaintiffs enjoy the right to free speech pursuant to the First and Fourteenth Amendments to the United States Constitution. Defendant is violating this right by prohibiting Plaintiffs from renting rooms at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests—unless Plaintiffs agree to pay an unconstitutional speech tax in the form of costs associated with police protection and any damage that results due to protesters' misconduct. Due to the content and/or viewpoint of Plaintiffs' ideas, more police protection will be needed at their conference than a comparably-sized non-controversial function, such as a birthday party. Thus, Defendant's policy has a financially disparate impact on people who espouse controversial ideas—and is thus unconstitutional pursuant to *Forsyth County*, 505 U.S. at 123-124.

Only the issuance of an injunction can remedy this problem insofar as the fundamental right of free speech is priceless and no monetary award to compensate Plaintiffs for this transgression can make Plaintiffs whole.

### B. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Plaintiffs are likely to prevail on the merits against Defendant via Plaintiffs claim of Defendant having violated Plaintiff's First and Fourteenth Amendment rights, which is actionable via 42 U.S.C. § 1983.

There are two elements for a 42 U.S.C. § 1983 claim: (1) the deprivation or violation of a federally protected right, privilege, or immunity, and (2) the action of the defendant violating the federally protected right was taken under color of state law. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).

In the instant case, it is undeniably clear that Plaintiffs have a constitutional right—via the First and Fourteenth Amendments—to rent rooms at Montgomery Bell Inn & Conference

10

Center for a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests without Plaintiffs incurring costs due to the hostile community's response to Plaintiffs' speech. See *Forsyth County*, 505 U.S. at 123-124; see also *Sonnier*; *Bible Believer's*, 805 F.3d at 247. Defendant is derailing Plaintiffs' conference—under the color of state law—by unconstitutionally requiring Plaintiffs to pay for police protection and any damage caused by protesters who are opposed to the viewpoint of Plaintiffs' speech. Even if the policy of requiring event organizers to pay for police protection and damage caused by protesters is enforced against all event organizers, such a policy nevertheless has a financially disparate impact on controversial speech insofar as the community's hostile reaction to said speech drives up costs. Costly police protection is not usually necessary for a birthday party; a hostile mob usually does not form to violently protest a senior citizens' euchre tournament.

## C.  PLAINTIFFS WOULD SUFFER IRREPARABLE INJURY IF THE COURT DOES NOT GRANT THE REQUESTED PRELIMINARY INJUNCTION

Plaintiffs would suffer irreparable injury if the Court does not grant Plaintiffs the requested preliminary injunction.

"[A] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by money damages." *Overstreet*, 305 F.3d at 578; see also *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate.").

In *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the U.S. Supreme Court noted that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." See also *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, even for minimal periods of time, constitutes irreparable harm).

11

In the instant case, Plaintiffs are being denied by Defendant the opportunity to rent rooms at Montgomery Bell Inn & Conference Center unless Plaintiffs agree to pay for police protection costs which are disparately increased due to the controversial nature of Plaintiffs' ideas and the community's hostile reaction to the same. Plaintiffs are thus suffering irreparably injury in the form of infringement of Plaintiffs' right to free speech.

## D. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION WOULD NOT CAUSE SUBSTANTIAL HARM TO DEFENDANT OR THIRD-PARTIES TO THE INSTANT CIVIL ACTION

The issuance of the requested preliminary injunction would not cause substantial harm to Defendant or third-parties to the instant civil action.

Defendant, as a governmental actor who is acting under the color of state law, is obligated to honor the freedoms guaranteed by the United States Constitution. Defendant suffers no harm—much less substantial harm—for being required to do his job in a manner which comports with constitutional obligations.

Third-parties to the instant civil action, likewise, would not suffer harm—much less substantial harm—should the Court award Plaintiffs the requested preliminary injunction. If third-parties are uninterested in what Plaintiff and Plaintiffs' invited speakers think, then said third-parties need not attend Plaintiffs' planned event. It is inconceivable that a third-party would suffer a cognizable injury solely because of political ideas being expressed.

A price-tag cannot be affixed to the exercise of a fundamental right. See *Forsyth County*. Just as a poll tax to exercise one's right to vote is unconstitutional, a free speech tax is likewise unconstitutional. Thus, the cost of security that Defendant must pay to safeguard Plaintiffs' right to free speech is not a harm recognized by law upon which Defendant can rely to argue that Defendant would be harmed if an injunction should issue.

12

## E. THE ISSUANCE OF THE REQUESTED PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

The issuance of the requested preliminary injunction is in the public interest. See *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions protecting First Amendment freedoms are always in the public interest.").

The First Amendment to the United States Constitution states in pertinent part, "Congress shall make no law * * * abridging the freedom of speech * * * or the right of the people peaceably to assemble[.]" It is in the public interest for governmental actors—such as Defendant—to comply with and not subvert this right which is fundamental to the traditions, institutions, and ideals of the United States of America.

By awarding Plaintiffs the requested preliminary injunction which would prohibit Defendant from requiring Plaintiffs to pay for security fees to ensure public safety or damage caused by protesters in order to rent the facilities at Montgomery Bell Inn & Conference Center, Plaintiffs would be able to discuss their ideas, thereby exercising their First Amendment freedoms.

The sacrosanct right to speak and think freely is in the public interest, and it always should be.

## VI. CONCLUSION

For the reasons set forth herein the Court should award Plaintiffs a preliminary injunction whereby Defendant is ordered to permit Plaintiffs to rent all the facilities at the Montgomery Bell Inn & Conference Center between May 17 and 19, 2019, to host Plaintiffs' proposed annual conference without Plaintiffs being required to pay costs associated with police protection or damage caused by protesters.

13

A price-tag cannot be attached to the exercise of the right to speak freely, and it would constitute unconstitutional content discrimination via a heckler's veto if Defendant charged Plaintiffs to protect Plaintiffs' event from their detractors or required Plaintiffs to pay for any damage caused by protesters—who might intentionally damage property so as to drive up Plaintiffs' costs.

Respectfully submitted,

/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Attorney for New Century Foundation and*
*Samuel Jared Taylor*

Dated: September 18, 2018

14

| | |
|---|---|
| **NEW CENTURY FOUNDATION,** | Case No. 3:18-cv-00839 |
| and | Hon. Aleta A. Trauger |
| **SAMUEL JARED TAYLOR,** | |
| Plaintiffs, | |
| v. | |
| **MICHAEL ROBERTSON,** *In his official capacity as director of Tennessee Department of Environment and Conservation,* | |
| Defendant. | |

## PROOF OF SERVICE

I, Van R. Irion, affirm that I am an attorney of record for a party to the above-captioned civil action, and on September 18, 2018, I served a true and accurate copy of these documents upon all attorneys of record who have registered to receive service of court filings via the Court's Electronic Filing System by submitting said document to said system.

/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Attorney for New Century Foundation and Samuel Jared Taylor*

Dated: September 18, 2018