UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| NEW CENTURY FOUNDATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SAMUEL JARED TAYLOR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case 3:18-cv-00839 |
| | ) | |
| MICHAEL ROBERTSON, in his official | ) | Judge Aleta A. Trauger |
| capacity as director of Tennessee | ) | |
| Department of Environment and | ) | |
| Conservation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

Defendant Michael Robertson in his official capacity submits the following memorandum in support of his Motion to Dismiss. Plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted. Specifically, the Complaint lacks sufficient factual matter to plausibly allege that the challenged contractual provisions violate Plaintiffs' First Amendment right to free speech. The Montgomery Bell Inn & Conference Center ("the Inn") is a non-public forum and the contractual provisions regulate speech in this forum (to the extent they regulate speech at all) in a manner that is viewpoint-neutral, governed by objective standards, and reasonable. Accordingly, the contractual provisions comply with the First Amendment and Plaintiffs have failed to state a claim upon which relief may be granted.

I.     STATEMENT OF THE CASE

1

The New Century Foundation ("NCF") and its president Samuel Jared Taylor ("Taylor") promote "European heritage, culture, and interests[.]" (Complaint, Doc. #1, ¶ 3.) NCF holds an annual conference at which attendees and speakers discuss "matters concerning European heritage, culture, and interests." (*Id.* at ¶ 1.) For the past five years, NCF has held its weekend-long conference at the Inn, which is "available to the public to rent" and is owned and operated by the Tennessee Department of Environment and Conservation ("TDEC"). (*Id.* at ¶ 8.) Defendant has historically provided police protection for Plaintiffs' event. (*Id.* at ¶ 10.)

Plaintiffs planned to rent the Inn's meeting hall and all available rooms to hold its conference from May 17 to May 19, 2019. (*Id.* at ¶¶ 11, 12.) However, they declined to reserve the space because they opposed certain provisions of the contract. (*Id.*) The contract requires groups who reserve space at the Inn to provide a security deposit "equal to 10% of the expected balance[.]" (*Id.*) This deposit is "intended to cover expenses that TDEC may reasonably incur because of the group's reservation and use of or attendance at the state park." (*Id.*) Specifically, the deposit would be applied toward:

> 1) any damage-repair costs . . . assessed to the group or its members or affiliates due to issues related to the use of the . . . facilities . . .; 2) reasonably required staff expenses that exceed typical staffing expenses of the facility, including event monitoring, set-up, take-down, or security to ensure public safety; . . . 4) any other costs above normal operating expenses reasonably resulting from the group's use of or attendance at the state park.

(*Id.*) Finally, the contract provided that the Park was permitted to assess costs above the security deposit if the deposit was insufficient to cover these expenses. (*Id.*)

Plaintiffs are now suing Defendant Michael Robertson in his official capacity as director of TDEC. They allege that the above contractual provisions requiring them to be "financially responsible for the cost of security to ensure public safety and any damage caused by protesters" violates the First Amendment. As relief, Plaintiffs request a declaration that the challenged

2

provisions violate their First Amendment rights and an injunction forcing Defendant to rent the Inn to Plaintiffs on their desired terms.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is only satisfied if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). A plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

Plaintiffs assert a claim for injunctive relief pursuant to 42 U.S.C. § 1983, which requires them to demonstrate that they are being deprived of a right secured by the Constitution and that the deprivation is being caused by a person acting under color of law. 42 U.S.C. § 1983. Plaintiffs allege that certain contractual provisions in the Inn's rental agreement violate their First Amendment rights. When determining whether a First Amendment violation has occurred, courts evaluate three things: (1) whether the speech is protected; (2) the nature of the forum; and (3) whether the government's action is justified under the requisite standard. *Cornelius v. NAACP Legal Defense and Educ. Fund.*, 473 U.S. 788, 797 (1985).

Regardless of whether Plaintiffs' speech is protected, they have not adequately alleged a Fist Amendment violation. First, the security deposit and potential charges are not a prior restraint

on speech.  Second, the Inn is a non-public forum and the challenged contractual provisions are viewpoint-neutral and reasonable in light of Defendant's commercial purpose for the Inn and similar facilities.  Finally, Plaintiffs cannot force Defendant to agree to a contract on terms that are not financially viable.

> **A. The challenged contractual provisions are not prior restraints because they do not limit speech before it occurs or require advance approval of government officials.**

State action relating to speech only qualifies as a prior restraint if it "block[s] expressive activity before it can occur."  *Polaris Ampitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001) (citing *Anderson v. United States*, 509 U.S. 544, 550 (1993).  The elements of prior restraint are:  (1) an individual cannot engage in expressive activity without the advanced approval of a government official; (2) the government official determines whether to grant permission—"in effect, a license or permit"—based on the proposed content of the proposed expression; and (3) approval is not routine but, instead, "involve[s] the appraisal of facts, the exercise of judgment, and the formation of opinion" by a government official.  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975).

In this case, the contractual provisions are not a prior restraint because not one of these characteristics is present.  Nothing about the contract's language gives Defendant the power to block speech before it occurs. (*See generally*, Complaint, Doc. #1, ¶ 12.)  All that is required of individuals who wish to engage in speech at the Inn is a reservation and payment of charges for rental of the facilities, meals, etc., that the renting party requests as well as a security deposit—a practice that is hardly unheard of in the hotel industry.  (*Id.*)  The Complaint contains only the allegation that the contract provisions are an "unconstitutional prior restraint," which is a legal conclusion that is not entitled to an assumption of truth and is insufficient to state a claim.  (*Id.* at ¶ 19.); *see Twombly*, 550 U.S. at 555.  Plaintiffs do not allege that patrons must obtain a license or

4

permit before engaging in speech at the Inn. (*See generally*, Complaint, Doc. #1, 19.) Likewise, there are no allegations that Defendant must approve patrons before they are permitted to rent the Inn's meeting space, let alone that Defendant conditions approval on an assessment of the content or viewpoint of proposed speech. (*Id.*) Absent any of these characteristics, Plaintiffs have failed to allege that the contractual provisions are a prior restraint.

> **B. The challenged contractual provisions are constitutional because they concern a non-public forum and are viewpoint-neutral and reasonable in light of the forum's commercial purpose.**

The First Amendment "does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Greenburgh Civic Ass'n*, 453 U.S. 114, 127 (1981). The State, like any property owner, has the "power to preserve the property under its control for the use to which it is lawfully dedicated." *Cornelius*, 473 U.S. at 800. The degree to which the government may control access to its property depends on the nature of the forum. *Id*.

The Supreme Court has identified three types of forums: traditional public forums, designated public forums[1], and non-public forums. *Perry Educ. Ass'n v. Perry Local Educ. Ass'n*, 460 U.S. 37, 44 (1983). The highest level of scrutiny applies to restrictions in traditional public forums. *Id*. Restrictions in designated public forums, property that the State has opened for expression by part or all of the public, receive the next level of scrutiny. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 667 (1998) (internal quotation marks and citation omitted). A non-public forum is property that is not by tradition or designation used for public expression; restrictions in these forums need only be viewpoint-neutral and reasonable. *Perry*, 460 U.S. at 49.

---

[1] Within designated public forums is a subset, the limited public forum, which is created when the government reserves a forum for certain groups and/or the discussion of certain topics. *Good News Club v. Milford Central School*, 533 U.S. 98, 106 (2001). Because Plaintiffs do not allege that the Inn is open to limited speakers or topics, this type of public forum is not at issue in this case.

5

> a. *The Inn is a non-public forum because hotel facilities have not traditionally been used to promote public expression and the State's purpose in operating it is commercial.*

Traditional public forums are limited to those properties that "by long tradition or by government fiat have been devoted to assembly and debate." *Perry*, 460 U.S. at 45. Property only qualifies as a public forum if its "principal purpose [is] the free exchange of ideas." *Cornelius*, 473 U.S. at 800. This includes areas that have traditionally been used for public assembly such as sidewalks, streets, and public parks. *Perry*, 460 U.S. at 45. In contrast, property that is not intended or traditionally used as a forum for public expression is a non-public forum. *Perry*, 460 U.S. at 45. In determining whether a forum is non-public, courts consider the purpose of the government-owned property as well as the property's location "because separation from acknowledged public areas may serve to indicate that the separated property is a special enclave, subject to greater restriction." *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680 (1992). Here, the Inn is a non-public forum because it is a revenue-generating property whose purpose, as mandated by statute, is to be self-sustaining.

Courts have held that property that the government operates for commercial purposes is a non-public forum. In *Krishna*, the plaintiffs challenged a regulation that prohibited the plaintiffs from distributing materials within an airport terminal.[2] *Krishna*, 505 U.S. at 676. The Court rejected the plaintiffs' argument that the First Amendment prohibited the government from restricting their speech inside the terminal. First, the Court noted that an airport terminal is not a public forum by traditional use because society has not historically reserved airport terminals for expressive activity. *Id.* at 680-81. Additionally, airports are "commercial establishments funded by users fees and designed to make a regulated profit . . . where nearly all who visit do so for some

---

[2] The regulation did, however, permit the plaintiffs to distribute their materials on the public sidewalks located outside the buildings. *Id.*

travel purpose[.]" *Id*. at 682. The government's purpose in operating the airport was to provide an attractive service to consumers and facilitate "passenger air travel, not the promotion of expression." *Id*. Accordingly, an airport terminal is a non-public forum where regulations need only be viewpoint-neutral and reasonable, which these were. *Id*. at 683-84; *see also Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974) (holding that public transit cars are a non-public forum because the government was "engaged in commerce" and its purpose was to provide an attractive service to consumers).

Similarly, a meeting center that a government entity rented out to private parties is a non-public forum. In *Chicago Acorn v. Metro. Pier and Exposition Auth.*, 150 F.3d 695 (7th Cir. 1998), the government entity rented out meeting spaces located at Navy Pier for the Democratic Convention and prevented plaintiffs from engaging in political demonstration at the Pier during the convention. *Id*. The court first noted that the Pier's meeting facilities, "[u]nlike public streets or the speakers' corner in [a city park]," were not "traditional sites for public assembly, demonstrations, or debate." *Id*. at 699 (citations omitted). Additionally, the government clearly did not intend that these spaces be used for the purpose of public expression—the spaces were "not open to the general public even though they are sites usable and sometimes used for discussion and other expressive activities." *Id*. at 700. Instead, the meeting rooms were rented to organizations for use by their members and guests—not the public at large ("unless the lessee decides to admit the public"). *Id*. Because the groups themselves controlled who was permitted to enter the facilities, the court held that the meeting rooms were a non-public forum. *Id*.

The same result was reached in *Atlanta Journal and Constitution v. City of Atlanta*, 322 F.3d 1298 (11th Cir. 2003). In that case, the Court reviewed a fee assessed to newspapers for the privilege of using an airport approved news-rack inside Atlanta's Hartsfield Airport. The Court

7

found the fee to be reasonable even though the fee was more than necessary to defray administrative costs. 322 F.3d at 1312. In so finding, the Court noted that the Airport, a non-public commercial forum, was under a duty to act as a self-sufficient business. 322 F.3d at 1301. As such, the Court found that the Airport was permitted to charge the fees as long as they were viewpoint neutral and reasonable. 322 F.3d at 1312.

Here, the Inn is a non-public forum. Hotel facilities are distinguished from areas like public streets and parks in that they have not been traditionally viewed by society as places open for public expression. Like an airport, hotel facilities are designed to provide a service to consumers that is unrelated to public expression. The Complaint does not allege that the Inn is open to the general public or that any member of the general public may use the space to engage in public expression at any time. Further, the State does not operate the Inn for the purpose of promoting public expression. Instead, the Inn operates as a revenue-generating facility that requires patrons to pay a fee if they wish to use the space. Tenn. Code Ann. § 11-3-305 (identifying inns located within state parks as "revenue-generating facilities"). The State's purpose in operating this facility is to be self-sufficient. Tenn. Code Ann. § 11-3-305. Because the Inn is not open for public expression by either tradition or State intention, it is a non-public forum.[3]

> b. *The challenged contractual provisions are viewpoint-neutral and reasonable in light of the Inn's revenue-generating purpose.*

The First Amendment does not require the State to freely grant access to its property without regard to the "disruption that might be caused by the speaker's activities." *Cornelius*, 473 U.S. at 800 (citation omitted). State action that affects a non-public forum will be upheld so long

---

[3] The Complaint contains no factual allegations that would suggest that the Inn is a designated public forum. The government cannot create a public forum by inaction but must instead "intentionally open[] a nontraditional public forum for public discourse." *Cornelius*, 473 U.S. at 802. Plaintiffs have not alleged that the State opened the Inn for public discourse. Accordingly, the Complaint fails to state a claim on this basis.

8

as it is viewpoint-neutral and reasonable in light of the State's purpose for the property. *See id.*; *Greenburgh,* 453 U.S. at 132. "The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 751 (6th Cir. 2004). Additionally, it is reasonable for the government to enact policies "to assure preservation of park facilities, to prevent uses that are dangerous, unlawful, or impermissible under [the park's] rules, and to assure financial accountability for damage caused by the event." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). Here, the challenged contractual provisions are constitutional because they are viewpoint-neutral and reasonable in light of the State's purpose in recovering excessive costs and preserving its facilities.

This contract is viewpoint-neutral. By its terms, the security deposit and any excess charges are "required for group reservations." (Complaint, Doc. #1, ¶ 12.) Any group that elects to use space at the Inn must pay the security deposit and, to the extent that it incurs the charges specified in the contract, will be responsible for paying these charges. (*Id.*) By the contract's terms, a group's viewpoint is irrelevant. Whatever the nature of the nature of the group and its event, be it a European heritage conference, Taylor Swift's birthday party, or a euchre tournament, the group is financially responsible for these charges. The Complaint does not allege that the contract's requirements apply to only certain groups or certain viewpoints. *See United Food*, 364 F.3d at 751 (concluding that a restriction on soliciting was viewpoint-neutral because there was no evidence that other groups were permitted to solicit or engage in other election-related activities in the area). Accordingly, the Plaintiffs have failed to adequately allege that the contract discriminates on the basis of viewpoint.

9

Regarding reasonableness, a government-owned, revenue-generating facility may impose costs on individuals who wish to engage in expressive activity on the property where those costs are reasonable in light of the facility's purpose of being self-sustaining. In *Atlanta Journal*, the court concluded that a fee for vendors to sell newspapers from news racks in the airport was reasonable in light of the airports purpose. The court first observed that the city operated the airport as a self-sufficient business and that the fee was assessed in the city's "role as a business proprietor rather than its ordinary role as a regulator." *Id.* at 1308. "[W]hen the City acts as a proprietor, reasonable regulations may include profit-conscious fees for access to expressive conduct, in a manner similar to fees that would be charged if the forum was owned by a private party[.]" *Id.* at 1309. After determining that the amount of the fee charged was reasonable, the court concluded that the fee was reasonable in light of the City's commercial and revenue-generating purposes for the forum. *Id*.

The Tennessee legislature has determined that revenue-generating properties within State parks, including inns, must be self-sufficient. Tenn. Code Ann. § 11-3-305. This requires that the "revenue generated at such facilities collectively is sufficient to cover all of the direct operational costs incurred at these facilities." *Id*. Acting as a proprietor, the State has determined that revenue-generating facilities like the Inn cannot be self-sufficient if these facilities are serving patrons who are disruptive, damage the facilities, and/or require more staffing than is typically provided. The challenged contractual provisions represent a cost-shifting measure that the State has implemented requiring patrons to bear the excess costs attendant to their use of the facilities. These costs accomplish no more than to recover excess costs that the State would otherwise have to bear, thereby preventing the facility from being self-sufficient—they do not result in additional revenue

for the State. The fees are thus designed to implement the Tennessee legislature's commercial purpose for State facilities such as the Inn.

Further, the State has an interest in maintaining public order to preserve its facilities. *See Thomas*, 534 U.S. at 322. Accordingly, a fee does not "impermissibly burden First Amendment rights" where it is "designed to meet the expenses incident to administration of the law and the cost of maintaining public order[.]" *Stonewall Union v. City of Columbus*, 931 F.2d 1130, 1133 (6th Cir. 1991) (citation omitted). Here, Defendant incurs costs in providing excessive staffing to Plaintiffs to maintain the public order at the event. It is reasonable to impose a fee designed to recover these costs.

> c. *The contractual provisions do not permit an unconstitutional level of discretion because the charges are assessed after the fact based objectively on the charges that are incurred.*

A State action in a non-public forum that is viewpoint-neutral and reasonable will be upheld if it is governed by objective standards rather than vesting a government official with unbridled discretion. *American Freedom Defense Initiative v. SMART*, 698 F.3d 885, 893 (6th Cir. 2012) (citation omitted). For example, in *Forsyth County, Georgia v. The Nationalist Movement*, 505 U.S. 123, 130 (1992), the Court struck down an ordinance that authorized a county official to assess a permit fee for events on government property based solely on his prediction of the event's cost. The ordinance provided no standards to determine the amount of the fee, which allowed the government official to consider or disregard any or all of the costs that could result from one group's use of the property while charging these costs to another group. *See id*. This level of unrestrained discretion was unconstitutional because the absence of objective standards allowed the government official to discriminate based on content or viewpoint. *Id*. at 131.

11

Conversely, an ordinance that imposes a cost on expressive activity is viewpoint-neutral where it is based on objective standards and applies uniformly to all those who use government-owned property. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). In *Stonewall Union v. City of Columbus*, 931 F.2d 1130 (6th Cir. 1991), a city ordinance imposed a flat $85 fee for processing a parade permit. The request for a permit was then sent to the Columbus Police Traffic Bureau to determine what the cost would be to provide traffic control at the parade. The permittee would then be charged the amount that the Columbus Police Traffic Bureau calculated. The court pointed out that the Columbus Police Traffic Bureau did not have unrestrained discretion to set the amount for traffic control—the fee was based on objective standards such as the estimated number of participants and viewers and the estimated time of the event. *Id*. at 1134-36. While these standards necessarily involved judgment, they were nonetheless "objective and definitive," thus preventing unconstitutional levels of discretion. *Id.* As the court stated in *SMART*, "eliminating all discretion is not required[.] Whenever a rule is applied by an official, a certain amount of discretion must necessarily be exercised." *SMART*, 698 F.3d at 893.

Here, the contract verifies that State officials do not exercise unbridled discretion in predicting the charges for the Plaintiffs' use of State facilities based on a group's viewpoint. By the terms of the contract, the charges are assessed based on the excess fees that the State actually incurs in renting the facilities to the Plaintiffs. (Complaint, Document 1, ¶ 12.) Because these charges are not assessed until after they have already been incurred, Defendant does not have the ability to make predictions and vary the cost based on his personal judgment of a group's viewpoint. Further, as the court made clear in *Stonewall* and reiterated in *SMART*, the Constitution does not prohibit State officials from exercising any discretion. Accordingly, it is not problematic that Defendant may exercise some discretion in determining, for example, the amount of staff to

12

provide for a particular event. As long as the discretion is exercised objectively—and Plaintiffs have not alleged otherwise—the government is permitted to use judgment in determining certain fees.

### C. Plaintiffs cannot force the State to enter into a contract.

There is a "general principle" that when the government "enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) (citation omitted); *see also Alvin Ltd. v. United States Postal Service*, 816 F.2d 1562, 1564 (Fed. Cir. 1987) ("The government enters into contracts as does a private person, and its contracts are governed by the common law."). It is generally recognized in negotiations between parties that a court cannot compel a party to enter into a contract against its will. *See McKee v. Continental Ins. Co.*, 234 S.W.2d 830, 831 (1950) (noting that a court "cannot make contracts for parties but can only enforce the contract which the parties themselves have made"). It thus follows that a court cannot force the State to enter into a contract on terms set by the opposing party. A court has thus held in the union setting that "there is no First Amendment right to have an employer agree to . . . sign a contract." *Clifford v. Moritz*, 472 F. Supp. 1094, 1101 (S.D. Ohio 1979).

Here, Plaintiffs wish to use the courts to force the State to sign a contract on terms that are not financially viable. As previously discussed, the Tennessee legislature has designated inns within State parks as "revenue-generating facilities" that must be self-sufficient. Tenn. Code Ann. § 11-3-305. The challenged contract provisions reflect a business determination that the State's revenue-generating facilities cannot be self-sufficient unless the State implements certain cost-recovery measures. It is for this reason that the State charges patrons for the damage that they cause and for excessive staffing expenses in State-owned facilities.

13

Plaintiffs cannot use the First Amendment to obtain a court-ordered windfall. Plaintiffs do not wish to be responsible for the expenses that are attendant to their stay. Rather than take their business elsewhere, to another Inn and conference center or use any traditional public forum that is available for their use, Plaintiffs are attempting to use the courts to force the State to contract with them on unprofitable terms. Plaintiffs cannot use the courts in this manner. Were the Plaintiffs negotiating with any resort and conference center operated by a private party, they would have no authority to force that party, against its will, to sign a rental agreement that omitted terms requiring the renting party to bear the costs of damage and excessive staff. The Plaintiffs do not somehow acquire the authority to do so merely because the Inn is owned by the State.

## I. CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief may be granted. The State requests that its motion to dismiss be granted.

Respectfully submitted,

**HERBERT H. SLATERY III
ATTORNEY GENERAL AND REPORTER**

s/ Dawn Jordan
**Dawn Jordan**, BPR No. 20383
Senior Deputy Attorney General
**Jay C. Ballard**, BPR No. 17242
Deputy Attorney General
**Sara Ohlman**, BPR No. 36313
Assistant Attorney General
UBS Tower, 18th Floor
P.O. Box 20207
Nashville, TN 37202-0207
Facsimile: (615) 741-7327
dawn.jordan@ag.tn.gov – (615) 741-6440
jay.ballard@ag.tn.gov - (615) 741-5031
sara.ohlman@ag.tn.gov – (615) 532-9631

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2018, a copy of **Defendant's Memorandum in Support of Motion to Dismiss** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Van R. Irion
Law Office of Van R. Irion
800 S. Gay St., Ste. 700
Knoxville, TN 37929

Parties may access this filing through the Court's electronic filing system.

  *s/ Dawn Jordan*
Dawn Jordan