## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **NEW CENTURY FOUNDATION,** | Case No. 3:18-cv-00839 |
| and | Hon. Aleta A. Trauger |
| **SAMUEL JARED TAYLOR,** | JURY DEMAND |
| Plaintiffs, | |
| v. | |
| **MICHAEL ROBERTSON,**<br>*In his individual and official capacities*<br>*as director of Tennessee Department of*<br>*Environment and Conservation*, | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

NOW COMES New Century Foundation (d/b/a American Renaissance) ("NCF") and Samuel Jared Taylor ("Taylor") (NCF and Taylor collectively "Plaintiffs"), by and through their attorneys, and hereby propound upon Michael Robertson ("Defendant") and this Honorable Court Plaintiffs' Motion for Summary Judgment:

1. For the reasons set forth in Plaintiffs' Brief in Support of Plaintiffs' Motion for Summary Judgment, the Court can and should enter summary judgment in accordance with Fed. R. Civ. P. 56 in favor of Plaintiffs.

WHEREFORE, Plaintiffs pray that this Honorable Court will enter summary judgment in Plaintiffs' favor against Defendant.

Respectfully submitted,


/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Lead Trial Attorney for New Century Foundation*
*and Samuel Jared Taylor*

Dated: May 1, 2019


/s/ Kyle J. Bristow
Kyle J. Bristow (Pro Hac Admitted)
**BRISTOW LAW, PLLC**
P.O. Box 381164
Clinton Twp., MI 48038
(T): (248) 838-9934
(F): (586) 408-6384
(E): bristowlaw@gmail.com
*Attorney for New Century Foundation and*
*Samuel Jared Taylor*

Dated: May 1, 2019

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

**NEW CENTURY FOUNDATION,**

and

**SAMUEL JARED TAYLOR,**

Plaintiffs,

v.

**MICHAEL ROBERTSON,**
*In his individual and official capacities*
*as director of Tennessee Department of*
*Environment and Conservation*,

Defendant.

Case No. 3:18-cv-00839

Hon. Aleta A. Trauger

JURY DEMAND

---

## PLAINTIFFS' BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES .................................................................................... i

II.  EXHIBIT LIST ........................................................................................................ iii

III.  STATEMENT OF ISSUES PRESENTED............................................................... 1

IV.  STATEMENT OF FACTS .................................................................................... 1

V.  STANDARD OF REVIEW ................................................................................ 10

VI.  LAW & ARGUMENT ......................................................................................... 10

    A.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST
        DEFENDANT.................................................................................................10

    B.  DEFENDANT DOES NOT ENJOY QUALIFIED IMMUNITY FOR PURPOSES
        OF PLAINTIFFS' INDIVIDUAL CAPACITY CLAIM .................................................16

VII.  CONCLUSION .............................................................................................. 17

# I. TABLE OF AUTHORITIES

**Case Law**

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....................................10

*Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011) ......................................................16

*Baker v. McCollan*, 443 U.S. 137 (1979) .......................................................11

*Bible Believer's v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) .............12-13, 15

*Boos v. Barry*, 485 U.S. 312 (1988) ...............................................................15

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ................................................14

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ............................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................10

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ....................12-16

*Fullilove v. Kutznick*, 448 U.S. 448 (1980).....................................................13

*Gitlow v. New York*, 268 U.S. 652 (1925) ......................................................12

*Gooding v. Wilson*, 405 U.S. 518 (1972) .......................................................14

*Graham v. Connor*, 490 U.S. 386 (1989) .......................................................11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................................................16

*Invisible Empire Knights of the Ku Klux Klan v. City of West Haven*, 600 F. Supp.
    1427 (D. Conn. 1985) ..............................................................................12

*Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574
    (1986)....................................................................................................10

*McQueen v. Beecher Cmty Sch*, 433 F.3d 460 (6th Cir. 2006)...........................11

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943)..........................................14-15

*Oklahoma City v. Tuttle*, 471 U.S. 801 (1985) ...............................................10

i

*Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37 (1983) ........................ 12

*Shuttlesworth v. City of Birmingham*, 373 U.S. 262 (1969) ............................... 15

*Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973) ........................................ 13

*Street v. J.C. Bradford & Co*, 886 F.2d 1472 (6th Cir. 1989) ........................... 10

*Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010) ..................................... 12

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ....................... 14

*Terminiello v. Chicago*, 337 U.S. 1 (1949) ........................................ 14

**Statutory Law**

42 U.S.C. § 1983 ............................................................. 1, 10-12

42 U.S.C. § 1988(b) ............................................................. 17

**Constitutional Law**

First Amendment to the United States Constitution ................... 1, 4, 6, 8, 11, 14

Fourteenth Amendment to the United States Constitution ........................... 1, 11

**Court Rules**

Fed. R. Civ. P. 56 ............................................................. 10

Fed. R. Civ. P. 56(a) .......................................................... 10

## II. EXHIBIT LIST

EXHIBIT A – Plaintiffs' First Amended Verified Complaint

EXHIBIT B – Affidavit of Rick Tyler

EXHIBIT C – October 4, 2018, Transcripts of Preliminary Injunction Motion Hearing

EXHIBIT D – April 5, 2018, Email from Michael Robertson to Colleagues

EXHIBIT E – July 24, 2018, Email from Michael Robertson to Colleagues

EXHIBIT F – June 15, 2018, Email from Michael Robertson to Colleagues

EXHIBIT G – Invoice Charging $3,543.07 for "Safety and Security" to Plaintiffs

EXHIBIT H – Defendant's Response to Plaintiffs' First Set of Document Requests

EXHIBIT I – Defendant's Responses to Plaintiffs' First Set of Interrogatories

EXHIBIT J – May 21, 2018, Email from Michael Robertson to Colleagues

EXHIBIT K – April 29, 2018, Email from Michael Robertson to David Purkey

EXHIBIT L – May 11, 2018, Email from Donna Lewis to Pat Wright

EXHIBIT M – July 24, 2018, Email from Scott Grammer to Michael Robertson

EXHIBIT N – Defendant's Response to Plaintiffs' Second Set of Document Requests

EXHIBIT O – Defendant's Responses to Plaintiffs' Second Set of Interrogatories to Defendant

EXHIBIT P – August 30, 2018, Letter from Rick Tyler to Michael Robertson

EXHIBIT Q – Operations Plan for American Freedom Party and Council of Conservative Citizens Conferences

EXHIBIT R – Email from Michael Robertson to Colleagues

EXHIBIT S – September 28, 2018, Email from Michael Robertson to Lauren Hill and Donna Lewis

EXHIBIT T – July 23, 2018, Email from Michael Robertson to Colleagues

EXHIBIT U – February 2018, Email Exchanges Between Michael Robertson and Colleagues

EXHIBIT V – August 7, 2018, Email Exchanges Between Michael Robertson and Colleagues

EXHIBIT W – July 27, 2018, Demand Letter to Michael Robertson

iv

### III. STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiffs are entitled to summary judgment against Defendant for Plaintiffs' 42 U.S.C. § 1983 claims against Defendant in Defendant's individual and official capacities as director of Tennessee Department of Environment and Conservation.

        Plaintiffs' Answer:                  Yes.

        Defendant's Expected Answer:      No.

2. Whether Defendant enjoys qualified immunity for purposes of Plaintiffs' individual capacity 42 U.S.C. § 1983 claim against Defendant.

        Plaintiffs' Answer:                  No.

        Defendant's Expected Answer:      Yes.

### IV. STATEMENT OF FACTS

New Century Foundation (d/b/a American Renaissance) ("NCF") and Samuel Jared Taylor ("Taylor") (NCF and Taylor collectively "Plaintiffs") are suing Michael Robertson ("Defendant")—by invoking 42 U.S.C. § 1983—for Defendant having violated Plaintiffs' right to free speech—as guaranteed to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution—by requiring Plaintiffs to pay an unconstitutional security fee to ensure public safety and to be required to pay for damage caused by protesters if Plaintiffs elect to rent publicly available rooms at the Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests.

Taylor is an adult natural person who is domiciled in the Commonwealth of Virginia. He is the president of NCF and a frequent speaker at private and public events about issues concerning European heritage, culture, and interests.

NCF is a trust established in the Commonwealth of Kentucky on October 1, 1993, for charitable and educational purposes. Since May 30, 1997, it has been authorized to transact business in the Commonwealth of Virginia, which is where it is headquartered. NCF publishes

materials about European heritage, culture, and interests, and it maintains a website at <www.amren.com>.

Defendant is an adult natural person who serves as the director of the Tennessee State Park Operations at the Tennessee Department of Environment and Conservation. Defendant is sued in his individual and official capacity as an agent of the Tennessee Department of Environment and Conservation. At all times relevant to the instant controversy, Defendant acted under the color of state law. Defendant is ultimately responsible for all policies enacted and enforced at Montgomery Bell Inn & Conference Center—including the unconstitutional policies at issue in the instant civil action.

Since 2012, NCF has annually rented facilities at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers discuss matters concerning European heritage, culture, and interests. As the figurehead of NCF, Taylor speaks at these weekend-long, suit-and-tie conferences, which are attended by peaceful and law-abiding individuals who support Plaintiffs' views.

Montgomery Bell Inn & Conference Center is available to the public to rent, and it is owned and/or operated by the Tennessee Department of Environment and Conservation—which is a governmental actor.

Due to the subject matter of the speech and the viewpoint espoused by Plaintiffs, people who disagree with the content and viewpoint of Plaintiffs' conferences protest them. Defendant has historically provided law enforcement personnel in order to maintain order at Plaintiffs' conferences.

Plaintiffs are planning to host a conference May 17 to May 19, 2019, at Montgomery Bell Inn & Conference Center. It is their intention, as has been the case every year for the past seven

years, to reserve not only the meeting hall but all of the sleeping rooms available to the public at the conference center. Plaintiffs make their reservations well in advance of the date of the conference with the specific intent of renting the entire facility.

When Plaintiffs initially attempted to reserve the Montgomery Bell Inn & Conference Center for their May 2019 conference, a slightly revised contract from previous years was provided to them that would additionally require Plaintiffs to be financially responsible for the cost of security to ensure public safety and any damage caused by protesters. On the third page of said contract was the following pertinent clause:

> Refundable Security Deposit:  in addition to the reservation deposit, a cash, check, or credit card deposit equal to 10% of the expected balance, including any anticipated catering costs and fees, is required for group reservations. This deposit is due at least 30 days prior to the reservation arrival date and is intended to cover expenses that TDEC may reasonably incur because of the group's reservation and use of or attendance at the state park. The park will hold this deposit as a security deposit to be applied toward: 1) **any damage-repair costs** or ancillary fees and charges assessed to the group or its members or affiliates **due to issues related to the use** of the park or its equipment and/or **facilities**, including park restoration following the group's use; 2) reasonably required state staff expenses that exceed typical staffing expenses for the facility, including event monitoring, set-up, take-down, or **security to ensure public safety**; 3) use of additional facilities; and/or 4) **any other costs above normal operating expenses reasonably resulting from the group's use of or attendance at the state park**.
>
> The parties agree that the Park may assess reasonable fees or charges above the security deposit, should the security deposit be insufficient to cover the expenses listed above. This policy excludes TN State and TN University group reservations.

(Emphasis added.)  (Exhibit A – Plaintiffs' First Amended Complaint, Ex. A).

It should be noted that Plaintiffs are not the only victims of Defendant's unconstitutional policy to impose a speech tax against organizations that espouse controversial viewpoints by requiring said organizations to incur additional costs due to the community's hostile reaction to said viewpoints:  Rick Tyler is affiliated with the American Freedom Party, which was invoiced

$21,057.69 for law enforcement personnel for a conference at Montgomery Bell State Park as recently as June of 2018. Says Mr. Tyler in an affidavit:

> I am involved with the American Freedom Party, which is a political party that, among other things, promotes the interests of European-Americans.
>
> Between June 15, 2018, and June 17, 2018, the American Freedom Party rented facilities at the Montgomery Bell State Park for a conference.
>
> I was personally involved with the American Freedom Party entering into the contract with the Department of Environment and Conservation (Tennessee State Parks) to rent the Montgomery Bell State Park for a conference in June of 2018. Attached to this affidavit is a true and accurate copy of the contract entered into by and between the American Freedom Party and the Department of Environment and Conservation (Tennessee State Parks).
>
> People who disagree with the political viewpoint of the American Freedom Party sometime protest its events—which necessitates police protection even though the American Freedom Party and its speakers and members are overwhelmingly law-abiding.
>
> By letter dated July 27, 2018, the American Freedom Party received an invoice in the amount of $21,057.69 due to police protection which was apparently incurred by the Department of Environment and Conservation (Tennessee State Parks) to protect the attendees of the June 2018 American Freedom Party conference from hostile protesters. Attached to this affidavit is a true and accurate copy of the July 27, 2018, invoice.
>
> The $21,057.69 costs for police protection which was needed due to the hostile community's reaction to our First Amendment-protected political ideas is not insignificant and it will have a chilling effect on the American Freedom Party's ability to have future conferences at the Montgomery Bell State Park.
>
> Had the American Freedom Party not espoused views which some people find to be objectionable, it is inconceivable that the American Freedom Party would have incurred anything close to $21,057.69 as costs for police protection.

(Exhibit B – Affidavit of Rick Tyler).

On April 5, 2018, Defendant emailed law enforcement-related personnel to inform them that they would be needed to "assist" with the American Renaissance April 27 – 29, 2018 conference. Noteworthy about said email is that Defendant states "The cost of your time associated

4

with this event will be relocated to cost associated with the event and will not be applied to your park budget." (Exhibit D – April 5, 2019, Email from Michael Robertson to Colleagues).

On July 24, 2018, Defendant emailed his colleagues to inform them that the American Freedom Party and the Council of Conservatives Citizens would like to rent facilities at Montgomery Bell State Park but that said organizations should not be able to rent the facilities due to them not being able to afford the security fees associated with their events. (Exhibit E – July 24, 2018, Email from Michael Robertson to Colleagues).

On June 15, 2018, Defendant emailed his colleagues to inform them that the new reservation contract—which contains the security fee deposit requirement—be used for all public parks throughout Tennessee. (Exhibit F – June 15, 2018, Email from Michael Robertson to Colleagues).

Defendant previously billed Plaintiffs $3,543.07 for "Safety and Security" for their April 2018 conference. (Exhibit G – Invoice Charging $3,543.07 for "Safety and Security" to Plaintiffs). In interrogatory responses, Defendant has acknowledged that law enforcement protection-related fees have been charged to organizations that rent Defendant's facilities. (Exhibit I – Defendant's Responses to Plaintiffs' First Set of Interrogatories, No. 4).

On May 21, 2018, Defendant emailed his colleagues to inform them that the American Freedom Party would like to hold a conference at Montgomery Bell State Park Conference Center, and Defendant disparaged the organization as being "affiliated with the white nationalist movement" and a "hate watch group"—which evinces that Defendant is cognizant of the political views of event organizers of conferences and arranges for law enforcement-related protection based upon said views. (Exhibit J – May 21, 2018, Email from Michael Robertson to Colleagues).

5

On April 29, 2018, Defendant emailed David Purkey to inform him that the April 2018 American Renaissance conference was "none eventful for the most part"—which evinces that Plaintiffs are law-abiding and that Plaintiffs' conferences can safely be held. (Exhibit K – April 29, 2018, Email from Michael Robertson to David Purkey). Furthermore, when Defendant testified at the preliminary injunction motion hearing, Defendant stated:

> We've had a pretty good relationship with the New Century Foundation associated with this conference.

> And there have been no issues with their conference being at the park, other than this one conflict. And we don't blame that on New Century Foundation. It was just an incident that occurred that raised our attention to whether or not we're able to provide adequate security for the event.

(Exhibit C – October 4, 2018, Transcripts of Preliminary Injunction Motion Hearing, pgs. 42-43).

On May 11, 2018, Donna Lewis emailed Pat Wright—both are colleagues of Defendant— to inform the latter that Donna Lewis had informed Taylor that the standard rental contract had been changed, that a security fee would be imposed against groups "we felt needed security," and that the security-protection fee would be factored in as a cost the event organizer would have to pay. (Exhibit L – May 11, 2018, Email from Donna Lewis to Pat Wright). Said Ms. Lewis:

> I let him [(Taylor)] know our contract was changed and there would be a security fee for any groups we felt needed security / if a group felt they needed security that, it would be 20%, so he said when I spend $30,000 I will need to expect to pay $6,000 is this correct and I told him yes and he said he understood he would just need to factor it in his cost. I have not sent the contract, but will send whenever I am good to send it. I had the para legal add a clause on the front of the contract (lol)[1] to let them know they would have to pay the fee that it would not be returned, when you say deposit they think they are going to get it back it nothing happens.

(Exhibit L – May 11, 2018, Email from Donna Lewis to Pat Wright).

---

[1] "LOL" is abbreviated slang for "laughing out loud." It appears that Ms. Lewis is laughing at the prospect of Taylor paying a "deposit" for law enforcement-related protection fees but then not getting the money back after all is said and done. There is, however, nothing funny about the First Amendment being trampled upon by Defendant and his colleagues.

On July 24, 2018, Scott Grammer emailed to Defendant two reports regarding invoice information associated with the American Freedom Party conference. Noteworthy about it is that $21,057.69 was incurred by the "Chief Ranger's Office" in relation to the conference. (Exhibit M – July 24, 2018, Email from Scott Grammer to Michael Robertson). By letter dated August 30, 2018, Rick Tyler of the American Freedom Party complained to Defendant about the cost-prohibitive nature of Defendant's imposition of security fees. (Exhibit P – August 30, 2018, Letter from Rick Tyler to Michel Robertson).

During discovery, Defendant produced the Operations Plan for the June 15-17, 2018, American Freedom Party and Council of Conservative Citizens Joint Conference. Noteworthy about it is that in the "Conference Background" section on the fourth page of it, the political viewpoints of these organizations are described as "white nationalist" and are compared to "American Renaissance." (Exhibit Q – Operations Plan for American Freedom Party and Council of Conservative Citizens Conferences). This shows that Defendant is cognizant of the viewpoints of these organizations, which is highly relevant to the instant case insofar as these three organizations—American Renaissance, American Freedom Party, and Council of Conservative Citizens—are suffering from Defendant's decision to charge security-related protection fees that are cost-prohibitive.

Likewise, in an email from Shane Petty to Defendant on April 4, 2014, the viewpoints of Plaintiffs and Council of Conservative Citizens was also discussed. (Exhibit R – Email from Michael Robertson to Colleagues). Furthermore, by email dated February 14, 2018, Defendant complained to David Purkey and others that there is "a growing concern around White Supremacy groups utilizing our Tennessee State Parks and their facilities to hold meetings[.]" (Exhibit U – February 2018, Email Exchanges Between Michael Robertson and Colleagues).

Defendant has discussed with his colleagues the "security deposit" and "security fees" that were previously charged to Plaintiffs. (Exhibit S – September 28, 2018, Email from Michael Robertson to Lauren Hill and Donna Lewis). Further, Defendant is in fact trying to collect these fees from similar-minded organizations, as evidenced Defendant's email message pointing out that Earl Holt of the Council of Conservative Citizens was "settling the outstanding security fee still owed." (Exhibit T – July 23, 2018, Email from Michael Robertson to Colleagues). Furthermore, by email dated August 6, 2018, Defendant informed a colleague that event organizers that owe outstanding security fees to Defendant are prohibited from renting facilities unless and until their accounts become current. (Exhibit V – August 7, 2018, Email Exchanges Between Michael Robertson and Colleagues).

The above-referenced documents were produced by Defendant to Plaintiffs during discovery. (Exhibit H – Defendant's Response to Plaintiffs' First Set of Document Requests; Exhibit N – Defendant's Response to Plaintiffs' Second Set of Document Requests).

On October 4, 2018, Defendant testified at the motion hearing concerning Plaintiffs' request for a preliminary injunction. (Exhibit C). Defendant testified that he is the director of operations for Tennessee State Parks, in the Department of Environment and Conservation. (Exhibit C, pg. 5, ¶¶ 13-16).

Although Plaintiffs had rented the Montgomery Bell Inn & Conference Center for conferences for many years without incident, Defendant testified that "our response to that has changed over the years based off of the protests that have developed relative to their conference[.]" (Exhibit C, pg. 20, ¶¶ 1-3). Defendant further testified that "They [(event organizers)] would * * * be charged for any * * * additional security fees" for their events. (Exhibit C, pgs. 26-27). Defendant made it clear: "If their event needed additional security or other measures in excess

8

what we normally provide, then those would be charged as cost recovery measures associated with that." (Exhibit C, pg. 27, ¶¶ 5-8).

Defendant testified at the preliminary injunction motion hearing that the number of protesters who demonstrate against Plaintiffs' conferences dictates how many law enforcement agents must protect the events: "For the last – the last year we have had to reach out to additional state agencies to provide additional security associated with the event because the attention of their event has brought more interest in protesting, and social media and intel associated with that indicated that a need to increase our ability to respond." (Exhibit C, pg. 27, ¶¶ 19-25).

Although multiple governmental agencies are involved with protecting Plaintiffs' conferences, Defendant charges Plaintiffs the costs Defendant incurs for providing law enforcement protection. (Exhibit C, pgs. 29-30). Defendant answered "Yes" when asked by the Court, "[T]he only cost recovery that will come out of this security deposit will be expenses incurred by your department?" (Exhibit C, pgs. 30-31). Defendant answered in the affirmative when the Court asked, "So that would be, for instance, you would bring in more park rangers?" (Exhibit C, pgs. 31, ¶¶ 5-12).

Defendant also testified that the security costs are estimated in part upon "the nature of the event"—which is content-discrimination for the reasons set forth in the following section of this Brief. (Exhibit C, pg. 36, ¶¶ 4-7).

Defendant testified that "the events associated with the New Century Foundation conference, the American Renaissance Conference and the number of protests associated with that and the resources that come in – opened our eyes relative to the costs associated with the conference[.]" (Exhibit C, pg. 45, ¶¶ 15-19). Defendant stated that "the conflict, brought into question our security abilities and did generate the need to update security measures associated

9

with the conference which, in turn, resulted in additional cost to the department." (Exhibit C, pg. 46, ¶¶ 5-11).

Defendant answered in the affirmative when asked, "So it is safe to say that the likelihood that the event is going to be protested would certainly be a factor in how many officers would have to be available?" (Exhibit C, pg. 47, ¶¶ 5-9).

Defendant testified that anyone can rent the conference center at issue in the instant case. (Exhibit C, pg. 49, ¶¶ 14-16).

Defendant testified that despite the American Freedom Party conference attendees not causing any damage, said organization was assessed a $21,000 fee for security in part due to protesters. (Exhibit C, pgs. 53-55).

## V.  STANDARD OF REVIEW

Plaintiffs are moving for summary judgment pursuant to Fed. R. Civ. P. 56(a).

The seminal cases interpreting Fed. R. Civ. P. 56 are *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  See *Street v. J.C. Bradford & Co*, 886 F.2d 1472, 1478-1480 (6th Cir. 1989) (providing an excellent analysis of Fed. R. Civ. P. 56(a) motion practice).

## VI.  LAW & ARGUMENT

### A.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANT

The elements of a 42 U.S.C. § 1983 claim are (1) deprivation or violation of a federally protected right, privilege, or immunity, and (2) the action of the defendant that violates the federally protected right, privilege, or immunity was taken under the color of state law.  *Oklahoma*

*City v. Tuttle*, 471 U.S. 801 (1985); *McQueen v. Beecher Cmty Sch*, 433 F.3d 460, 463 (6th Cir. 2006).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). If a particular constitutional amendment provides the textual source of a constitutional protection, "that Amendment, not the more generalized notion of a 'substantive due process,' must be the guide for analyzing these claims." *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The particular constitutional amendment at issue in the instant civil action is the First Amendment, which prohibits in part governmental actors from violating the free speech rights of people. The guarantee of the freedom of speech has been incorporated against the states by way of the Fourteenth Amendment to the United States Constitution. *Gitlow v. New York*, 268 U.S. 652 (1925).

Plaintiff can make a prima facie case against Defendant for Plaintiffs' 42 U.S.C. § 1983 claim; to wit: (1) Plaintiffs enjoy a First Amendment-protected right not to be subjected to viewpoint-based or content-based discrimination by governmental actors, and (2) under the color of state law, Defendant engaged in viewpoint-based or content-based discrimination by requiring Plaintiffs to pay a fee associated with the viewpoint and/or content of Plaintiffs' speech in order to rent the facilities of the Montgomery Bell Inn & Conference Center in order to host a conference.

In the instant case, Plaintiffs have a First Amendment right to rent the Montgomery Bell Inn & Conference Center facilities without being subjected to viewpoint-based or content-based discrimination by Defendant.

11

According to the Court's Memorandum of November 15, 2018, the Montgomery Bell Inn & Conference Center—which Plaintiffs desire to rent—is a nonpublic forum. (Dkt. 28, PageID #185-192). However, the total cost of Plaintiffs' rental of the nonpublic forum—including security fees—is related to the use of designated public space by third-parties who are not invited to attend Plaintiffs' event but who wish to protest it. Thus, Defendant is trying to make Plaintiffs pay for the cost of security related to a gathering of protesters in a designated public forum, which constitutes viewpoint-based and/or content-based discrimination insofar as a price-tag cannot be affixed to the exercise of speech due to the community's hostile reaction to the same. *Invisible Empire Knights of the Ku Klux Klan v. City of West Haven*, 600 F. Supp. 1427, 1435 (D. Conn. 1985); *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 123-124 (1992); *Bible Believer's v. Wayne County*, 805 F.3d 228, 247 (6th Cir. 2015); *Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010).

Content-based discrimination is subject to strict scrutiny review, and in order to survive strict scrutiny review, the government bears the burden of showing that the regulation at issue "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37 (1983). Defendant cannot and will not meet this heavy burden, because that which is "strict in theory" is often "fatal in fact." See *Fullilove v. Kutznick*, 448 U.S. 448, 519 (1980) (MARSHALL, J., concurring).

The requirement for Plaintiffs to pay for security to ensure public safety at Plaintiffs' conference constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because it authorizes Defendant to "examine the content of the message conveyed, estimate the public response to that content, and judge the number of police necessary to meet that response." See *Forsyth County*, 505 U.S. at 123-124; see also *Sonnier*, 613 F.3d 436; *Bible Believer's v. Wayne County*, 805 F.3d at 247.

12

The Supreme Court of the United States has proscribed government actors from engaging in content-based discrimination by charging groups for law enforcement because such fees are based in whole or in part upon the community's hostile reaction to the speech of said groups. *Forsyth County*, 505 U.S. 123. Even if the policy applies to all groups equally, it has a disproportionate impact on event organizers who espouse controversial viewpoints and is thus not viewpoint- or content-neutral because said event organizers are charged a disproportionately greater fee than other event organizers.

The requirement that Plaintiffs be responsible for damage caused by protesters constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because it permits a hostile mob to damage property in order to impose a speech tax against Plaintiffs for exercising their constitutionally-guaranteed right to free speech. Plaintiffs cannot be financially burdened based even in part upon the community's hostile reaction to Plaintiffs' speech. See *Forsyth County*; *Bible Believer's*; *Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973) ("[S]tate officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights.").

In *Forsyth County*, the Supreme Court noted that charging event organizers for law enforcement protection to guard their events constitutes content-based discrimination, because it "requires that the administrator, in order to assess accurately the cost of security for * * * participants, must examine the content of the message conveyed, estimate the public response to that content, and judge the number of police necessary to meet that response." *Forsyth County*, 505 U.S. at 123-124. Further noted the Supreme Court, "if the permit scheme 'involves appraisal of facts, the exercise of judgment, and the formation of an opinion,' *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940), by the licensing authority, 'the danger of censorship and of abridgment of

13

our precious First Amendment freedoms is too great' to be permitted. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)." *Id*. at 131.

In the instant case, security fees are based on Defendant appraising the facts of the content and viewpoint of Plaintiffs and Defendant forming an opinion based on this appraisal of how many law enforcement officers are needed to safeguard Plaintiffs' event. Thus, Defendant is engaged in *de facto* unconstitutional censorship of controversial speech by requiring Plaintiffs and other event organizers to incur a speech-tax for espousing controversial ideas—which is not only not nominal but cost-prohibitive for controversial event organizers.

Furthermore, the Supreme Court noted in *Forsyth County* that the "cost of policing relates to content [of speech]." *Id*. at 134. This is because the security fee is directly or indirectly the result of the public's reaction to the speech. *Id*. (citing *Boos v. Barry*, 485 U.S. 312 (1988); *Murdock v. Pennsylvania*, 319 U.S. 105 (1943)). "Speech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob." *Id.* at 135 (citing *Gooding v. Wilson*, 405 U.S. 518 (1972); *Terminiello v. Chicago*, 337 U.S. 1 (1949)).

It is undeniable that Plaintiffs enjoy a First Amendment-guaranteed right to speak so as to share their ideas with people interested in hearing them, it is unquestionable that the would-be attendees of Plaintiffs' planned conference enjoy a First Amendment-guaranteed right to listen to Plaintiffs' ideas so as to consider them, and it is undeniable that people who are opposed to Plaintiffs' ideas may protest the conference in a civil manner outside the venue since it is located at a public park. Defendant does not have the right to shut down the marketplace of ideas by charging discriminatory security fees because Plaintiffs' ideas are controversial and a hostile community is opposed to them—which causes security to be required.

14

Defendant's security fee is an unconstitutional speech-tax, and it is in violation of the Constitution of the United States. See *Murdock*, 319 U.S. 105 ("No state shall convert a liberty into a license, and charge a fee therefore."); *Shuttlesworth v. City of Birmingham*, 373 U.S. 262 (1969) ("If the State converts a right (liberty) into a privilege, the citizen can ignore the license and fee and engage in the right (liberty) with impunity.")

Since the security fees are a direct and proximate result of the community's hostile reaction to the content and viewpoint of Plaintiffs' ideas, the imposition of such fees is content-based and viewpoint-based discrimination. See *Bible Believers*, 805 F.3d at 247 ("Listeners' reaction to speech is not a content-neutral basis for regulation[.]").

Noteworthy about Defendant's answer to Request for Production of Documents No. 9 of Exhibit N is that Defendant admitted that there are no memorandums, written policies, or statutes that authorize Defendant to articulate how to calculate how much law enforcement-related fees are to be calculated for event organizers. Furthermore, in Defendant's answers to Interrogatories Nos. 1, 2, and 3 of Exhibit O, Defendant failed to provide any concrete factors Defendant uses to calculate how much law enforcement-related fees should be incurred by event organizers. (Exhibit O – Defendant's Responses to Plaintiffs' Second Set of Interrogatories to Defendant).

In *Forsyth County*, it was noted that no subjective discretion can be exercised by the manager of a government-owned venue in determining the amount of law enforcement-related protection fees. *Forsyth County*, 505 U.S. at 132-134. In the instant case, Defendant has exercised free reign to determine what event organizers are charged to rent facilities at Defendant's parks, and Defendant has made these determinations based in part upon the nature of the speech and the community's hostile reaction to it—which has a disproportionately costly impact upon controversial speech.

## B. DEFENDANT DOES NOT ENJOY QUALIFIED IMMUNITY FOR PURPOSES OF PLAINTIFFS' INDIVIDUAL CAPACITY CLAIM

"Qualified immunity protects federal and state officials from money damages unless a plaintiff can establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies "unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

In the instant case, Defendant engaged in unconstitutional viewpoint-based or content-based discrimination by requiring Plaintiffs to pay a fee associated with the viewpoint and/or content of Plaintiffs' speech in order to rent the facilities of the Montgomery Bell Inn & Conference Center in order to host a conference. Furthermore, the right of the people to not be subjected to viewpoint-based or content-based fees in order to exercise the fundamental right to free speech is clearly established law. See *Forsyth County*.

As set forth within the Statement of Facts section of this Brief, Defendant was personally involved in charging law enforcement-related protection fees against Plaintiffs and likeminded organizations, and these charges were based in part upon the community's hostile reaction to the speech—which was manifested in the number of protesters who demonstrated against the controversial conferences. The law enforcement-related protection fees are not *de minimis*, and Defendant conspired with his colleagues not to let event organizers who failed to pay said fees rent facilities at Defendant's parks in the future.

It is worth pointing out that it was made clear to Defendant before the instant civil action began that Defendant cannot lawfully charge law enforcement-related protection fees to event

16

organizers which are increased due to the content or viewpoint of the event organizer's speech. (Exhibit W – July 27, 2018, Demand Letter to Michael Robertson). It should have been apparent to Defendant that Defendant's actions against Plaintiffs were unlawful, but Defendant persevered.

## VII. CONCLUSION

For the reasons set forth herein, this Court can and should enter summary judgment in Plaintiffs' favor against Defendant. Furthermore, Defendant does not enjoy qualified immunity for purposes of Plaintiffs' individual capacity claim, and the Court should rule accordingly.

The Court's preliminary injunction should be made a permanent order of the Court, an evidentiary hearing to determine Plaintiffs' damages should be held since Defendant is individually liable for the same, and the Court should schedule a hearing to determine what amount of attorney's fees and costs should be paid by Defendant to Plaintiffs pursuant to 42 U.S.C. § 1988(b).

Respectfully submitted,


/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Lead Trial Attorney for New Century Foundation*
*and Samuel Jared Taylor*

Dated: May 1, 2019

17

/s/ Kyle J. Bristow
Kyle J. Bristow (Pro Hac Admitted)
**BRISTOW LAW, PLLC**
P.O. Box 381164
Clinton Twp., MI 48038
(T): (248) 838-9934
(F): (586) 408-6384
(E): bristowlaw@gmail.com
*Attorney for New Century Foundation and*
*Samuel Jared Taylor*

Dated: May 1, 2019

18

## CERTIFICATE OF SERVICE

I, Van R. Irion, affirm that on May 1, 2019, a copy of this Certificate of Service and the foregoing Plaintiffs' Motion for Summary Judgment and Plaintiffs' Brief in Support of Plaintiffs' Motion for Summary Judgment were filed with the Court's Electronic Filing System. Notice of said filing will be sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt as follows:

Dawn Jordan, Esq. – dawn.jordan@ag.tn.gov

Jay C. Ballard, Esq. – jay.ballard@ag.tn.gov

Sara Ohlman, Esq. – sara.ohlman@ag.tn.gov

/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Attorney for New Century Foundation and Samuel Jared Taylor*

Dated: May 1, 2019