UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **NEW CENTURY FOUNDATION,** | Case No. 3:18-cv-00839 |
| and | Hon. Aleta A. Trauger |
| **SAMUEL JARED TAYLOR,** | |
| Plaintiffs, | |
| v. | |
| **MICHAEL ROBERTSON,** *In his individual and official capacity as director of Tennessee Department of Environment and Conservation*, | |
| Defendant. | |

## PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT

NOW COMES New Century Foundation (d/b/a American Renaissance) ("NCF") and Samuel Jared Taylor ("Taylor") (NCF and Taylor collectively "Plaintiffs"), by and through their attorney, and hereby propounds upon Michael Robertson ("Defendant") and this Honorable Court Plaintiffs' First Amended Verified Complaint:

### I. INTRODUCTION

1. Plaintiffs are suing Defendant—by invoking 42 U.S.C. § 1983—for Defendant having violated Plaintiffs' right to free speech—as guaranteed to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution—by requiring Plaintiffs to pay an unconstitutional security fee to ensure public safety and to be required to pay for damage caused by protesters if Plaintiffs elect to rent publicly available rooms at Montgomery Bell Inn & Conference Center to

host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests.

## II. PARTIES

2. Taylor is an adult natural person who is domiciled in the Commonwealth of Virginia. He is the president of NCF and a frequent speaker at private and public events about issues concerning European heritage, culture, and interests.

3. NCF is a trust established in the Commonwealth of Kentucky on October 1, 1993, for charitable and educational purposes. Since May 30, 1997, it has been authorized to transact business in the Commonwealth of Virginia, which is where it is headquartered. NCF publishes materials about European heritage, culture, and interests, and it maintains a website at <www.amren.com>.

4. Defendant is an adult natural person who serves as the director of the Tennessee State Park Operations at the Tennessee Department of Environment and Conservation. Defendant is sued in his individual and official capacity as an agent of the Tennessee Department of Environment and Conservation. At all times relevant to the instant controversy, Defendant acted under the color of state law. Defendant is, upon information and belief, ultimately responsible for all policies enacted and enforced at Montgomery Bell Inn & Conference Center—including the unconstitutional policies at issue in the instant civil action.

## III. JURISDICTION AND VENUE

5. This Court enjoys subject matter jurisdiction over the instant civil action because the controversy involves a federal question about Plaintiffs' constitutional right to free speech being violated by Defendant. 28 U.S.C. §§ 1331, 1343, 2201; 42 U.S.C. § 1983; U.S. Const. amend. I; U.S. Const. amend. XIV.

2

6. The Court enjoys personal jurisdiction over Defendant because Defendant is subject to the jurisdiction of a court of general jurisdiction within the State of Tennessee since Defendant is located in the State of Tennessee and Defendant did and caused actionable injury to Plaintiffs in the State of Tennessee. Fed. R. Civ. P. 4(k)(1)(A); Tenn. Code Ann. § 20-2-223.

7. Venue is appropriate with this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Court's jurisdictional district. 28 U.S.C. § 1391(b)(2). Specifically, the Montgomery Bell State Park Inn & Conference Center Plaintiffs would like to rent is located at 1000 Hotel Ave., Burns, TN 37029.

## IV. STATEMENT OF FACTS

8. Since 2012, NCF has annually rented facilities at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers discuss matters concerning European heritage, culture, and interests. As the figurehead of NCF, Taylor speaks at these weekend-long, suit-and-tie conferences, which are attended by peaceful and law-abiding individuals who support Plaintiffs' views.

9. Montgomery Bell Inn & Conference Center is available to the public to rent, and it is owned and/or operated by the Tennessee Department of Environment and Conservation—which is a governmental actor.

10. Due to the subject matter of the speech and the viewpoint espoused by Plaintiffs, people who disagree with the content and viewpoint of Plaintiffs' conferences protest them. The Tennessee Department of Environment and Conservation has historically provided law enforcement protection in order to maintain order at Plaintiffs' conferences.

11. Plaintiffs have planned to host—and would still like to host—a conference May 17 to May 19, 2019, at Montgomery Bell Inn & Conference Center. It is their intention, as has been the case

3

every year for the past five years, to reserve not only the meeting hall but all of the sleeping room available to the public at the conference center. Plaintiffs make their reservations well in advance of the date of the conference with the specific intent of securing the entire facility.

12. When Plaintiffs attempted to reserve the Montgomery Bell Inn & Conference Center for their May 2019 conference, a slightly revised contract from previous years was provided to them which would additionally require Plaintiffs to be financially responsible for the cost of security to ensure public safety and any damage caused by protesters. (Exhibit A – May 2019 Contract). On the third page of said contract is the following pertinent term:

> Refundable Security Deposit: in addition to the reservation deposit, a cash, check, or credit card deposit equal to 10% of the expected balance, including any anticipated catering costs and fees, is required for group reservations. This deposit is due at least 30 days prior to the reservation arrival date and is intended to cover expenses that TDEC may reasonably incur because of the group's reservation and use of or attendance at the state park. The park will hold this deposit as a security deposit to be applied toward: 1) **any damage-repair costs** or ancillary fees and charges assessed to the group or its members or affiliates **due to issues related to the use** of the park or its equipment and/or **facilities**, including park restoration following the group's use; 2) reasonably required state staff expenses that exceed typical staffing expenses for the facility, including event monitoring, set-up, take-down, or **security to ensure public safety**; 3) use of additional facilities; and/or 4) **any other costs above normal operating expenses reasonably resulting from the group's use of or attendance at the state park**.
>
> The parties agree that the Park may assess reasonable fees or charges above the security deposit, should the security deposit be insufficient to cover the expenses listed above. This policy excludes TN State and TN University group reservations.

(Emphasis added.)

13. The requirement for Plaintiffs to pay for security to ensure public safety at Plaintiffs' conference constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because it authorizes Defendant to "examine the content of the message conveyed, estimate the public response to that content, and judge the number of law enforcement agents

4

Case 3:18-cv-00839 Document 33 Filed 01/15/19 Page 4 of 13 PageID #: 234

necessary to meet that response."[1]  See *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 123-124 (1992); see also *Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010); *Bible Believer's v. Wayne County*, 805 F.3d 228, 247 (6th Cir. 2015).

14. The requirement that Plaintiffs be responsible for damage caused by protesters constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because it permits a hostile mob to damage property in order to impose a speech-tax against Plaintiffs for exercising their constitutionally-guaranteed right to free speech.  Plaintiffs cannot be financially burdened based even in part upon the community's hostile reaction to Plaintiffs' speech.  See *Forsyth County*, *supra*; *Bible Believer's*, *supra*; *Smith v. Ross*, 482 F.2d 33, 37 (6th Cir. 1973) ("[S]tate officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights.").

15. Prior to filing suit, Plaintiffs requested that Defendant not require Plaintiffs to be contractually responsible for security fees to ensure public safety or damage caused by protesters, but Defendant refused.  (Exhibit B – Letter).  Plaintiffs are ready, willing, and able to enter into the contractual agreement with Defendant, but for the unconstitutional contractual terms complained of within this Complaint.

16. Upon information and belief, there is an alarming trend in the United States of America in which politically right-of-center events require costly security measures to be utilized to try to prevent left-of-center protesters from causing property damage or personal injury to the event venues and people who are sympathetic to the speakers' views.  For example, approximately

---

[1] The discrimination is palpable if one employs the Birthday Party Test:  the question presented is whether the cost for law enforcement protection would be different if Plaintiffs were hosting a similarly sized birthday party on the same date, time, and location as its European interests-themed conference.  If the cost for law enforcement protection is different, then there is content and/or viewpoint discrimination.

Case 3:18-cv-00839 Document 39   Filed 01/15/19 Page 5 of 18 PageID #: 235

$600,000.00 was planned to be spent by the University of California-Berkeley for security for a brief speech by conservative commentator Ann Coulter,[2] the University of California-Berkeley spent approximately $600,000.00 for security for a brief speech by conservative commentator Ben Shapiro,[3] and the University of California-Berkeley planned to spend upwards of $1,000,000.00 for a brief speech by conservative commentator Milo Yiannopoulos.[4] If security costs could be passed on in whole or in part by governmental actors to event organizers who espouse politically right-of-center ideas like those espoused by Plaintiffs, Ben Shapiro, Ann Coulter, or Milo Yiannopoulos, then such would result in *de facto* censorship insofar as fewer—or no—such events could occur in the United States of America due to the massive security costs that are directly and proximately a result of the reaction of a hostile community.

17. Defendant does not enjoy qualified immunity for having imposed a heckler's veto against Plaintiffs in the form of law enforcement protection fees being charged for Plaintiffs' proposed event due in part to the community's hostile reaction to said proposed event, because such violates clearly established constitutional law. See *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 123-124 (1992); see also *Sonnier v. Crain*, 613 F.3d 436 (5th Cir. 2010); *Bible Believer's v. Wayne County*, 805 F.3d 228, 247 (6th Cir. 2015).

18. Plaintiffs have suffered general and special damages due directly and proximately to Defendant violating Plaintiffs' sacrosanct right to free speech.

---

[2] Schellong, Megan. "Here's how much security costs when an incentiary speaker comes to campus." <http://college.usatoday.com/2017/09/13/heres-how-much-security-costs-when-an-incendiary-speaker-comes-to-campus/>. 13 September 2017.
[3] Gecker, Jocelyn. "The Cost of Free Speech Isn't Cheap at UC Berkeley." <https://www.usnews.com/news/politics/articles/2017-09-14/uc-berkeley-under-tight-security-for-conservative-speaker>. 15 September 2017.
[4] Lerner, Kira. "Berkeley plans $1 million spend on security for Milo Yiannopoulos' event amid massive budget cuts." <https://thinkprogress.org/berkeley-free-speech-cost-c140085b8cc0/>. 22 September 2017.

6

Case 3:18-cv-00839 Document 59-2   Filed 05/01/19   Page 6 of 18 PageID #:525
Case 3:18-cv-00839 Document 39   Filed 01/15/19   Page 6 of 13 PageID #:236

19. Defendant acted with actual malice and/or a reckless and wanton disregard as to Plaintiffs' right to free speech. As such, the imposition of punitive damages against Defendant in Plaintiffs' favor is just and proper.

## V. CAUSES OF ACTION

### COUNT I
### DEFENDANT VIOLATED PLAINTIFFS'
### FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREE SPEECH
### 42 U.S.C. § 1983

20. The foregoing paragraphs of this Complaint are incorporated by reference as if each is fully set forth herein.

21. Plaintiffs are guaranteed the right to free speech pursuant to the First and Fourteenth Amendments to the United States Constitution.

22. Defendant violated Plaintiffs' right to free speech by requiring Plaintiffs to pay an unconstitutional security fee to ensure public safety and to be required to pay for damage caused by protesters if Plaintiffs elect to rent publicly available rooms at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests. Such requirements constitute unconstitutional content discrimination and viewpoint discrimination for unconstitutionally overly broad policies which directly and proximately result in an unconstitutional prior restraint on speech.

23. Defendant acted under the color of state law.

24. Due directly and proximately to Defendant having violated Plaintiffs' right to free speech, Plaintiffs have and will continue to suffer injuries.

WHEREFORE, Plaintiff prays that this Honorable Court will enter judgment in Plaintiffs' favor against Defendant by awarding Plaintiffs: (1) Pursuant to 42 U.S.C. § 1988(b), the

7

Case 3:18-cv-00839 Document 59-2 Filed 05/01/19 Page 7 of 18 PageID #: 526
Case 3:18-cv-00839 Document 39 Filed 01/15/19 Page 7 of 13 PageID #: 237

reasonable attorney's fees and costs incurred by Plaintiffs to bring forth and litigate the instant civil action; (2) a money judgment in Plaintiffs' favor against Defendant in Defendant's personal capacity for nominal, special, general, and punitive damages in amounts which are just and proper; and (3) any and all further relief that can be awarded by law or equity.

## COUNT II
## DECLARATORY RELIEF

25. The foregoing paragraphs of this Complaint are incorporated by reference as if each is fully set forth herein.

26. The Court can and should decree that Defendant violated Plaintiffs' right to free speech by requiring Plaintiffs to pay an unconstitutional security fee to ensure public safety and to be required to pay for damage caused by protesters if Plaintiffs elect to rent publicly available rooms at Montgomery Bell Inn & Conference Center to host a conference at which attendees and speakers would discuss matters concerning European heritage, culture, and interests. Since Plaintiffs desire to continue hosting annual conferences at Montgomery Bell Inn & Conference Center and Defendant appears to want to enforce an unconstitutional policy which would adversely impact said conferences, an actual and justiciable controversy exists between Plaintiffs and Defendant, the location of the controversy is within the Court's jurisdiction, a present adjudication of the controversy is necessary to guide Plaintiffs' and Defendant's conduct and to preserve legal rights, and declaratory relief will avoid a multiplicity of actions at law or avoid potential conflicts between Plaintiffs and Defendant in a related action. See Fed. R. Civ. P. 57; 28 U.S.C. §§ 2201 and 2202.

WHEREFORE, Plaintiff prays that this Honorable Court will award Plaintiffs declaratory relief by decreeing that Defendant's policy of requiring renters of the facilities at Montgomery Bell Inn & Conference Center to pay for security fees to ensure public safety and damage caused by protesters is unconstitutional.

8

Case 3:18-cv-00839 Document 59-2 Filed 05/01/19 Page 8 of 18 PageID #: 527
Case 3:18-cv-00839 Document 33 Filed 01/15/19 Page 8 of 18 PageID #: 238

## COUNT III
## INJUNCTIVE RELIEF

27. The foregoing paragraphs of this Complaint are incorporated by reference as if each is fully set forth herein.

28. The Court can and should issue a preliminary and a permanent injunctive order against Defendant whereby Defendant is ordered to permit Plaintiffs to rent publicly available rooms at Montgomery Bell Inn & Conference Center without requiring Plaintiffs to pay for the cost of security fees to ensure public safety or damage caused by protesters. See Fed. R. Civ. P. 65; *Bible Believers*, *supra*; *Forsyth County*, *supra*; *Ohio Republic Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (describing elements for injunctive relief to be awarded); *Samuel v. Herrick Memorial Hospital*, 201 F.3d 830, 833 (6th Cir. 2000) (describing factors to be considered when deciding whether injunctive relief should be awarded); *Solid Rock Foundation v. Ohio State University*, 478 F.Supp. 96 (S.D. Ohio 1979) (using Sixth Circuit and Supreme Court case law to decide whether a preliminary injunction should issue for a First Amendment-related controversy).

29. Plaintiffs are being threatened by some injury for which Plaintiffs have no adequate legal remedy. See *Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107, 1118 (6th Cir. 2001).

30. Plaintiffs have a likelihood of success on the merits of Plaintiffs' 42 U.S.C. § 1983 claim that Defendant violated Plaintiffs' right to free speech since Plaintiffs can show that Plaintiffs are being deprived of a federally protected right by Defendant under color of state law. See *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).

31. Plaintiffs will suffer irreparable harm in the form of Plaintiffs' right to free speech being denied to them should the Court not grant Plaintiffs injunctive relief. See *Connection Distrib. Co.*

9

Case 3:18-cv-00839 Document 59-2 Filed 05/01/19 Page 9 of 18 PageID #: 3528
Case 3:18-cv-00839 Document 33 Filed 01/15/19 Page 9 of 13 PageID #: 235

*v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury.").

32. The award of injunctive relief to permit Plaintiffs to rent publicly available rooms at Montgomery Bell Inn & Conference Center without requiring Plaintiffs to pay for the cost of security fees to ensure public safety or of damage caused by protesters will not cause Defendant to suffer substantial harm because Defendant is required by constitutional law to do the same anyways.

33. The award of injunctive relief to permit Plaintiffs to rent publicly available rooms at Montgomery Bell Inn & Conference Center without requiring Plaintiffs to pay for the cost of security fees to ensure public safety or damage caused by protesters will serve the public interest because it is in the public's interest for the First and Fourteenth Amendments to the United States Constitution to be honored and violated by governmental actors. See *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions protecting First Amendment freedoms are always in the public interest.")

34. Plaintiffs should not be required to post bond if the Court grants Plaintiffs' request for a preliminary injunction because the relief requested by Plaintiffs is undeniably in the public interest.

35. Plaintiffs' request for preliminary injunctive relief is time-sensitive, because Plaintiffs have already announced the location and date of the planned May 2019 conference. Because Plaintiffs were unwilling to agree to a contract that includes unconstitutional language, meeting rooms and sleeping rooms at the conference have been put on the market for other people to rent, and if the rooms are rented before the date of the conference, Plaintiffs will be unable to hold their

10

conference. If Plaintiffs are not able to rent the entire Montgomery Bell Inn & Conference Center, then protesters could deliberately rent some of the available sleeping rooms so as to illicitly gain access to the conference to unlawfully disrupt it and to harass the attendees of the conference. *See, e.g.*, *McCalden v. California Library Assoc.*, 955 F.2d 1214 (9th Cir. 1990) (describing an incident in which a controversial speaker's First Amendment rights were violated when protesters rented a room adjacent to the room rented by the speaker at a public library so as to disrupt his presentation).

WHEREFORE, Plaintiffs pray that this Honorable Court will award Plaintiffs a preliminary and permanent injunction whereby Defendant is prohibited from requiring Plaintiffs to pay for security fees to ensure public safety or damage caused by protesters in order to rent the facilities at Montgomery Bell Inn & Conference Center.

Respectfully submitted,

/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Attorney for New Century Foundation and Samuel Jared Taylor*

Dated: January 15, 2019

11

Case 3:18-cv-00839 Document 59-2 Filed 05/01/19 Page 11 of 18 PageID #: 1530
Case 3:18-cv-00839 Document 39 Filed 01/15/19 Page 11 of 13 PageID #: 241

**<u>VERIFICATION</u>**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

```
_____
Samuel Jared Taylor
```
*In his personal and official capacity as president of New Century Foundation*

Dated: __**Nov. 26, 2018**__

12

Case 3:18-cv-00839 Document 59-2 Filed 05/01/19 Page 12 of 18 PageID #: 531
Case 3:18-cv-00839 Document 39 Filed 01/15/19 Page 12 of 13 PageID #: 242

# CERTIFICATE OF SERVICE

I, Van R. Irion, affirm that on January 15, 2019, a copy of this Proof of Service and the foregoing Plaintiffs' First Amended Complaint was filed with the Court's Electronic Filing System. Notice of said filing will be sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt as follows:

Dawn Jordan, Esq. – dawn.jordan@ag.tn.gov

Jay C. Ballard, Esq. – jay.ballard@ag.tn.gov

Sara Ohlman, Esq. – sara.ohlman@ag.tn.gov

/s/ Van R. Irion
Van R. Irion (#024519)
**LAW OFFICE OF VAN R. IRION**
800 S. Gay St., Ste. 700
Knoxville, TN 37929
(T): (865) 766-4040
(F): (865) 766-4101
(E): van@irionlaw.com
*Attorney for New Century Foundation and Samuel Jared Taylor*

Dated: January 15, 2019

13

Case 3:18-cv-00839 Document 59-2 Filed 05/01/19 Page 13 of 18 PageID #: 532
Case 3:18-cv-00839 Document 39 Filed 01/15/19 Page 13 of 13 PageID #: 243

# DEPARTMENT OF ENVIRONMENT AND CONSERVATION TENNESSEE STATE PARKS
## GROUP CONTRACT

PARK NAME: Montgomery Bell Inn & Conference Center
ADDRESS: 1000 Hotel Ave. Burns, TN 37029

GROUP SALES: Donna Lewis
PHONE: (615)797-3101
FAX: (615)797-3722
EMAIL: Donna.L.Lewis@tn.gov

GROUP CODE: 9342   FOLIO#: W-3686   EVENT #(S): 33502 / 33504 / 33506

CONTRACT DUE: 08/03/18   GROUP DEPOSIT REQUIREMENT: $3,603.79   SECURITY DEPOSIT REQUIREMENT $3,603.79
SECURITY DEPOSIT DUE: 04/17/19
ORGANIZATION: New Century Foundation
ROOMING LIST DUE: 04/17/19

RELEASE DATE OF ACCOMMODATIONS: 04/02/19

CONTACT: Henry Wolff / Jared Taylor   EMAIL: wolff@nc-f.org
ADDRESS: P.O. BOX 527   CITY: Oakton   STATE: VA   ZIP CODE: 22124
PHONE: (703)716-0900   FAX #: (___)___-____   CELL #: (___)___-____

RESERVATION DATE(S):   Arrival Date – 5/17/2019   Departure Date – 5/19/2019
GUEST CHECK IN TIME: 4:00 PM   GUEST CHECK OUT TIME: 11:00 AM (Inn Rooms) 10:00 AM (Cabins)
*** Room Rate based on 1- 2 PEOPLE, each additional adult is $10.00 ***
*** No Senior Citizen or State Rate discounts are applied within group reservations***

| TYPE OF LODGING | NUMBER | DATES | RATES | TOTALS |
|---|---|---|---|---|
| GUEST ROOMS | 104 | 05/17/19 & 05/18/19 | $90.00 X 5%=$94.50 per room per night single or double occ. | $19,656.00 |
| SUITES | 2 | 05/17/19 & 05/18/19 | $245.00 X 5%=$257.25 per suite per night | 1,029.00 |
| CABINS | 8 | 05/17/19 & 05/18/19 | $190.00 X 5%=$199.50 per night (2 night minimum) | 3,192.00 |
| SHELTERS | | | | $ |
| VILLAS | | | | $ |
| GROUP LODGE | | | | $ |
| OTHER | | | | $ |

TOTAL LODGING $23,877.00

METHOD OF PAYMENT:   CASH ☐   CHECK ☐   CREDIT CARD ☐   OTHER ☒   **DIRECT BILLED**
ORGANIZATION PAYS:   ROOMS ☒   L/D PHONE CALLS ☐   MEALS ☒   BAR ☒   GIFT SHOP ☐   GOLF ☐
STATE TAX EXEMPTION:   ON FILE ☐   PROVIDE COPY ☒ (Please include copy with signed contract)
EQUIPMENT: LCD PROJECTOR ☐ Quantity   PORTABLE SCREEN ☐ Quantity   DVD ☐ Quantity   FLIPCHART ☐ Quantity
EASEL ☐ Quantity   DRY ERASE BOARD ☐ Quantity   MARKERS ☐ Quantity   PODIUM ☐ Quantity   HANDHELD MIC ☐ Quantity
LAPEL MIC ☐ Quantity   STAGE (4X8 Sections) ☐ Quantity   PIPE & DRAPING ☐ EXTENSION CORDS ☐ Quantity   REGISTRATION TABLE ☐
OTHER ☐ .   TOTAL EQUIPMENT CHARGES: $____

| DAY/DATE | TIME PERIOD | TYPE OF SET - UP | ROOM | # of GUESTS | CHARGE |
|---|---|---|---|---|---|
| FRI / 05/17/19 | 4PM-10PM | SEE ATTACHMENT | FULL CENTER / EBR | 275 | $525.00 |
| SAT / 05/18/19 | 8AM-10PM | SEE ATTACHMENT | FULL CENTER / EBR | 275 | $1050.00 |
| SUN / 05/19/19 | 8AM-12PM | SEE ATTACHMENT | FULL CENTER / EBR | 275 | $525.00 |
| / | | | | | $ |
| / | | | | | $ |
| / | | | | | $ |
| / | | | | | $ |

MEETING ROOM(S) TOTAL: $2,100.00

# FOOD AND BEVERAGE REQUEST

**FINAL HEAD COUNT DUE: 05/10/19**

| MEAL REQUESTS | BREAK REQUESTS | BAR REQUESTS |
|---|---|---|
| TO BE DETERMINED | TO BE DETERMINED | TO BE DETERMINED |

## TERMS/CONDITIONS & GENERAL POLICIES

### MENU
A complete menu selection for banquets shall be presented to the park four weeks prior to the group arrival date. If menus are not provided, then the menu selection will be determined at the discretion of park management. A final head count is due ONE week prior to group arrival. If not received, the last head count given will be the head count used. Changes made to attendee numbers after this time must receive prior written approval by management.

Initial_____    Date_____

### BILLING POLICIES
If billing arrangements are requested, prior credit approval must be made at least 30 days in advance with management The responsible party shall pay all applicable federal, state and county taxes. A deposit and guaranteed credit card will still be required.

Initial_____    Date_____

### RESERVATIONS
Reservations will be accepted on a "first come first serve basis." A completed Group Contract and the required deposits must be submitted before the reservation is confirmed. Failure to return a signed contract and deposits may result in forfeiting your reservation. When individual reservations are made within a block of rooms, such as family reunions, the required deposit is the first night's lodging rate plus applicable taxes. These individual guarantees within a block of rooms can be made by credit card as well as cash or check.

Initial_____    Date_____

### DEPOSITS
Reservation Deposit: a cash, check, or credit card deposit equal to a minimum of 10% of the expected balance, including any anticipated catering costs and fees, is required for group reservations. This deposit is required to book and hold the reservation.

Refundable Security Deposit: in addition to the reservation deposit, a cash, check, or credit card deposit equal to 10% of the expected balance, including any anticipated catering costs and fees, is required for group reservations. This deposit is due at least 30 days prior to the reservation arrival date and is intended to cover expenses that TDEC may reasonably incur because of the group's reservation and use of or attendance at the state park. The park will hold this deposit as a security deposit to be applied toward: 1) any damage-repair costs or ancillary fees and charges assessed to the group or its members or affiliates due to issues related to the use of the park or its equipment and/or facilities, including park restoration following the group's use; 2) reasonably required state staff expenses that exceed typical staffing expenses for the facility, including event monitoring, set-up, take-down, or security to ensure public safety; 3) use of additional facilities; and/or 4) any other costs above normal operating expenses reasonably resulting from the group's use of or attendance at the state park.

The parties agree that the Park may assess reasonable fees or charges above the security deposit, should the security deposit be insufficient to cover the expenses listed above. This policy excludes TN State and TN University group reservations.

Initial_____    Date_____

### CANCELLATION
Group reservations must be canceled 45 days prior to the arrival date to receive 100% refund of deposit. If canceled 44 to 30 days prior to arrival date, a 50% refund will be given. If canceled 29 days or less – NO REFUND. The cancellation date shall be extended to 90 days prior to the arrival date if a group books 50% or more of an inns' rooms or over any premium holiday dates such as Memorial Day, Fourth of July, etc.). The reservations for these groups must be cancelled 90 days prior to the arrival date to receive 100% refund of deposit. If canceled 89 to 60 days prior to arrival date a 50% refund will be given. If canceled 59 days or less – NO REFUND. For family reunions and other blocked groups the cancellation period for an individual confirmed room within the block is the same as a group reservation. Each individual reservation must be canceled 45 days prior to the arrival date to receive 100% refund of deposit.

Initial_____    Date_____

## GENERAL POLICIES

Inn management reserves the right to inspect and control all parties and meetings held on the premises. All food and beverages must be purchased through the park. The responsible party will assist in the enforcement of this clause if the inn deems it necessary. The responsible party will be held accountable for any damage to the building, inn's equipment, decoration or fixtures. The use of confetti or rice is prohibited; however, bird seed may be substituted. The park reserves the right to make substitutions for any items or services that are not readily available. Room assignment is subject to change. Rooms keys must be returned to the front desk at check-out. Management will not be responsible for articles lost, stolen or forgotten.

## FOR STATE/FEDERAL GROUPS ONLY:

This agreement is subject to the appropriation and availability of state and/or federal funds. Payment by journal voucher is subject to the guidelines of Finance and Administration Policy 12. A state group may journal voucher rooms, suites, cabins, phone calls, light refreshments and meeting rooms if approved by the State Agency Department Head. Meal arrangements must include a specified number of participants with the number guaranteed at least one week prior to the group's arrival date. If the number of participants is not guaranteed, the meal is not considered a group function and all members must pay for their meals and submit Travel Claims for reimbursement.

THIS CONTRACT IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ABOVE. SIGN AND RETURN' THE CONTRACT TO THE PARK ADDRESS.

TOTAL ROOM AND MEETING ROOM CHARGES **$25,977.00** This does NOT include any food/beverage totals.

ANTICIPATED CATERING/FOOD/BEVERAGE CHARGES **$ 10,060.85**

TOTAL ANTICIPATED ROOM, MEETING ROOM, AND CATERING/FOOD/BEVERAGE CHARGES **$ 36,037.85**

AUTHORIZED GROUP REPRESENTATIVE          DATE

*Donna L____* (signature)                                     7.24.18

AUTHORIZED PARK REPRESENTATIVE         DATE



STATE OF TENNESSEE
## DEPARTMENT OF ENVIRONMENT AND CONSERVATION
Office of General Counsel
William R. Snodgrass Tennessee Tower
312 Rosa L. Parks Avenue, 2nd Floor,
Nashville, Tennessee 37243
Telephone: (615) 532-0131

July 31, 2018

Keith M. Alexander
2670 Union Avenue Ext., Suite 818
Memphis, TN 38112

Mr. Alexander,

Thank you for your letter dated July 27, 2018, directed to Mr. Mike Robertson. Please direct all further communications regarding this matter to my attention. The Department of Environment and Conservation, Tennessee State Parks Group Contract is currently the standard group contract used at Tennessee State Parks, including Montgomery Bell State Park. We use this group contract for all new group reservations regardless of speech or viewpoint. We do not intend to modify its language for the New Century Foundation.

Regards,

Brian Clifford
Assistant General Counsel