# American Freedom Party and Council of Conservative Citizens Joint Conference

## June 15th – 17th , 2018

# OPERATIONS PLAN

# Montgomery Bell State Park

## 1020 Jackson Hill Road

## Burns, TN 37029

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

# Table of Contents

Table of Contents…………………………………………Page 2

Mission Statement ………………………………………Page 3

Conference Background……………………………… Page 4

Protest Location & Expectation……………………….Page 4

Transportation / Parking……………………………….Page 5

Lodging…………………………………………..........Page 5

Uniform…………………………………………….......Page 5

Breaks/Meals…………………………….................Page 6

Mandatory Equipment………………………………….Page 6

Communication / Command Post………………….…Page 6

Arrest Procedures……………………………………….Page 7

Provisions for Young Children……………………….…Page 7

Protestor/Counter-Protestor Parking……………….…Page 7

Officer Staging and Activation……………..…………..…Page 8

TSP Roster……………………………………………….Page 9

Assisting Agency Support………………………………Page 10

Pre-Event Training and Preparedness………………….Page 11

Personal Conduct……………………………………….Page 12

Aircraft Support………………………………………….Page 13

Map of the Protest Site……………………………….…Page 14

Medical, Mass Casualty Event, and Evacuation Plan…….Page 15

Local Contact Numbers..………………………….…….Page 16

Tennessee State Parks / TCA Code Reference………….Page 17

## Mission

"To preserve and protect, in perpetuity, unique examples of natural, cultural, and scenic areas and provide a variety of safe, quality, outdoor experiences through a well-planned and professionally managed system of state parks."

From its beginning in 1937, Tennessee State Parks were established to protect and preserve the unique natural, cultural and historic resources of Tennessee. The public interest has also been served by a variety of benefits for citizens and communities produced by our state park system, promoting stronger communities and healthier citizens across the state through diverse resource-based recreation while conserving the natural environment for today and tomorrow – preserving authentic Tennessee places and spaces for future generations to enjoy. As stewards of the resources in our parks, we seek to manage Tennessee's state parks in order to preserve and protect valued resources and to provide a balance of services and benefits for the enjoyment of the people.

Tennessee State Parks offers a variety of conference centers, meeting rooms, and indoor/outdoor facilities for all public entities or individuals to rent and occupy. On occasion, Tennessee State Parks have been utilized as meeting locations by controversial organizations, various groups, or individuals seeking to hold controversial conferences or events. These organizations and events are known to attract groups and individuals who attend Tennessee State Parks to exercise their First Amendment Right to freedom of expression in either support or opposition to controversial user groups.

Tennessee State Parks and its personnel will support any individual, group, or organization exercising their inalienable rights; while also ensuring the free expression of those rights does not place such individuals or their fellow park guests in harm's way or causes any disruption to the operations and safety of Tennessee State Parks.

During such controversial events, Tennessee State Parks has the added task of organizing additional State Park Rangers to assist with the overall safety and security of special events and park operations. These controversial events may also require additional assistance from local and state agencies when there is a potential for civil disruption. These precautions are utilized to ensure the safety for all persons and Tennessee State Park property.

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

## Conference Background

The upcoming conference is a joint conference hosted by the American Freedom Party and the Council of Conservative Citizens. Both of these groups are self-described white nationalist organizations. This is the first conference held by either of these groups at a Tennessee State Park, however there is some overlap between these groups and attendees of the American Renaissance conference that has been taking place at Montgomery Bell for the last several years.

The American Freedom Party is based primarily out of California, the Council of Conservative Citizens is based primarily in the southern states, and has historical ties to the KKK. The controversial speakers for this conference as well as the groups general rhetoric is likely to draw protest activity.

## Protest Location & Expectation

• Montgomery Bell State Park Inn & Conference Center
  Highway 70, White Bluff, TN 37187

• At this time no protests permits have been applied for, however similar events in the past have drawn protesters, and there have been several mentions of the event on social media.

• American Freedom Party and Council of Conservative Citizens Conferees will meet inside the Montgomery Bell Inn & Conference Center. The assigned protest area will be located in the grassy area below the playground. The protest area will be marked with fencing to clearly define the protest area. The lower parking area will be blocked off. Law Enforcement officers will be stationed in the lower parking area between the two groups.

• The Montgomery Bell Inn Restaurant will be closed to public. Portable toilets will be provided at the protest area for the protestors.

Protest Time:

At this time there is very limited public announcements of protests on Saturday, however we have very limited information on when organized protests may take place. We must be prepared to react to any activity that presents itself over the entirety of the weekend.

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

Protest Groups aware of the event per social media:

- ANTIFA
- Jam City Antifa
- Mercy Junction Justice and Peace Center

## Transportation & Parking

- All commissioned Rangers shall drive their assigned patrol unit to the Montgomery Bell Inn by 11:00am on Friday, June 15th. Further parking instructions for the event will be assigned to Rangers at Briefing.

## Lodging

- Commissioned Park Rangers and law enforcement will be utilizing the entire 6th floor of the top floor of the Montgomery Bell Inn, and the auditorium at the park headquarters. Due to limited space and bedding, rangers will have to bring sleeping bags and mats as well, although this will not be nearly as bad as the event in April. Park Rangers who are commuting to assist with the event may stay at their nearby park housing or private residences.

## Uniforms

- Commissioned Rangers will be required to wear the agency issued field uniform with full duty belt gear. The preferred uniform top will be the long-sleeve green field shirt. The field uniform will consist of wearing the outer ballistic vest. The outer ballistic vest will be either green or black vests that are issued by the department. Agency issued boots will be required, as the day will consist of long hours standing and roving the park. The field uniform will be clean and pressed to represent the highest professional image of the Tennessee State Park Ranger. **Bring an issued green ranger t shirt, we may switch to this as our working uniform if the weather conditions dictate.**

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

## Breaks & Meals

• Commissioned Rangers will rotate duty stations throughout the day to receive adequate restroom, sleep, and meal breaks. These rotations will be required to reduce stress and fatigue among the rangers. Boxed lunches will be provided by the park restaurant, and distributed to rangers working the event. Rangers are encouraged to bring their own snacks, water bottles, and meals of choice. During breaks, Rangers will be allowed to travel no further than the City of Dickson to obtain any additional meals or incidentals. The entirety of the 6th floor will be set aside for LE only, additionally a climate controlled tent will be placed near the TBI mobile command post near the protest area.

## Mandatory Equipment

• All commissioned rangers will be required to bring full duty belt with gun, full magazines, defense spray, baton, hand cuffs, and radio. Rangers will have additional handcuffs or restraint devices nearby at all times. Rangers will be required to wear ballistic vests at all times of the weekend conference. Shotguns will be kept secured in locked patrol vehicles. Members of the Special Operations Response Team (SORT) will have secured rifles, rifle plate vests, helmets, and medical gear. Paramedic Jeremy Vaden will be on site with Paramedic emergency medical gear. Supplemental equipment such as night vision and body cameras are encouraged. Patrol vehicles will be staged near the inn and protest sites. At least one (1) vehicle is required to be staged at each duty station during the protest event.

## Communication & Command Post

• Friday, June 15th, TSP will utilize two inn suites on the 6th floor of the Montgomery Bell Inn to stage equipment, radios, and lodging supplies. These two suites will serve as an auxiliary command center for TSP Rangers throughout the duration of the weekend, it will be the primary command center for night patrols.

• On the morning of Friday June 15th, The Tennessee Bureau of Investigation (TBI) will station their mobile command post in the area near the old water tower at the entrance to the Inn parking area. This unit will serve as the event command post. A representative from Tennessee State Parks will be present in the command post with TBI for the duration of the event on 6/16/2018. The command post will serve at the joint communication headquarters for both TSP, TBI, THP, and TDOC.

• Command Radio Frequency will be TACN D3 Mutual Aid 15 per attached comms. plan. TSP will utilize UTDEC for all tactical communications between TSP rangers and TSP command.

## Arrest Procedures

• In the event of a citation or arrest, the responding ranger will address the situation and violator. The ranger will radio to the incident command, and request additional rangers for back-up. The rangers working the incident will address the violators, and turn the individual or group of individuals over the Montgomery Bell State Park duty rangers to issue citation, transport, and book the individual into Dickson County Detention Center. This will require that a Montgomery Bell State Park duty ranger be present at the event as to ensure the likelihood that any misdemeanor shall be done in their presence. The commissioned rangers working the event area will act as a support system, and supplemental safety force to aid the commissioned rangers at Montgomery Bell State Park.

• In the even to a mass arrest, The Tennessee Department of Corrections (TDOC) will Have a transport bus on site to secure and transport violators.

## Provisions for Young Children

• If the arrest of the parent(s) or legal guardian(s) of young children becomes necessary, the Tennessee Department of Children's Services personnel will be contacted to take custody of and care for these children.

## Conferee & Protestor Parking

• Conferee Parking will be in the lower loops of the Montgomery Bell Inn & Conference Center Parking Lots. The upper parking lot will be closed off for law enforcement vehicles only.

• Protestor Parking with be at the Basketball Parking lot.

• Saturday, June 16th, A visitor check-point will be set up prior to the event area to assist visitors with appropriate parking areas, and advise of prohibited items within the protest area.

## Officer Staging & Activation

TSP Team Leaders will be on site by 10:00am for Leader Briefing, ALL TSP Rangers will be on site by 10:30am on Friday, June 15th and be present for Briefing at 11:00 AM

*Detailed assignments will be disbursed at Briefing on April June15[th].

June 15th, 2018
10:00am – TSP Team Leaders Arrive for Briefing
11:00am – **Inter Agency Briefing** All personnel must arrive at Montgomery Bell Inn
(Report to back room of restaurant for briefing)
12:00pm -Lunch
1:00 pm tour of protest area and post locations
2:00pm-6:00pm Security Patrols and Conference Visitor Check-in
            (6:00-8:00pm - Rotate out dinner)
*This is be the time that most conferees will be arriving.
6:00pm - 12:00am - Roving Patrols & THP Impaired Driving enforcement

June 16th, 2018
12:00am - 7:00am - Night Patrols
7:00am - 8:00am -  Area sweep and patrol
8:30am – Morning Leader Briefing at Incident Command (TBI command post)
8:00am - 6:00pm -  (or once protest has ceased) Rotating Stationed Posts and Patrols
            THP - Site saturation and Strike Team Patrols
*Boxed Lunches and meal rotations at 12:00pm
            (6:00-8:00 - Rotate out diner)
6:00pm - 12:00am - Roving Patrols & THP Impaired Driving Enforcement

June 17th, 2018
12:00am - 7:00am - Night Patrols
7:00am - 8:00am -  Area Sweep and Patrol
8:00am - 12:00pm - Rotating Stationed Post and Patrol
            Personnel will be relieved of duty as conference ends

# TSP ROSTER

Chief Ranger's Office
Shane Petty – Chief Ranger
J.R. Tinch – Asst. Chief Ranger
Travis Bow – Asst. Chief Ranger

TSP RANGER LIST - Entire Weekend (27th -29th)
John Ball – Dunbar Cave
Mike Dobis –  Regional Manager
Ryan Forbess – Regional Manager
Don Fend – Bicentennial Mall
Sam King – Natural Areas
Jane Switzer – Warriors Path
Mark Taylor – Edgar Evins
Jeremy Vaden – Cummins Falls (PARAMEDIC)
Neal Weatherly – Standing Stone
Josh Kuykendal-Cumberland Trail
Shawn Settle-Chickasaw
Caleb Doster- Old Stone Fort
Camron Martin-Pickett (Saturday Only)
Daniel Basham – Booker T. Washington (Friday Night Only)

SORT TEAM – Entire weekend
Josh Waggener – Alvin C. York – Team Commander
Tommy Garner – Henry Horton
Angelo Giansante – Hiawassee Ocoee
Wes Grigsby – David Crockett
Mark Houston – Cumberland Mountain
Brittney Magness - Pickwick
Shane Morrow – Reelfoot
Jesse Germeraad-Rocky Fork State Park


Montgomery Bell State Park Rangers
Pat Wright – Park Manager
Megan Dunn
Scott Ferguson
Geoff Ransford
Eric Runkle
Tim Wheatley

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

Tennessee State Parks (TSP) Departmental Staff
Mike Robertson – Director of Operations
Brian Clifford - Department Legal Counsel
Kim Schofinski – Public Information Officer

# Assisting Agency Support

**TBI**
Tennessee Bureau of Investigation
2 Shifts of 25 officers-Assisting with protest area posts on Friday and Saturday
Command Post

    Command SAC Russ Winkler (615) 336-7188
    Intelligence ASAC Caleb Utterback (931) 982-0594

**THP**
Tennessee Highway Patrol - Will have THP Agency Operations Plan
Friday June 15th – DUI and Traffic Enforcement
Saturday June 16th - 4 Strike Teams (12 members each) Roving units on park & protest area.
Special Operations Assets – Bomb Dog to sweep the mornings of June 15th & 16th

    Capt. Jason Thompkins (615) 719-3764

THP SPEC OPS  Denny Mitchell (615) 332-4836

**TDOC**
Tennessee Department of Corrections
Friday June 15th and Saturday June 16th - Ten (10) to Twenty (20) personnel & Transport Bus.
Corrections Officers will assist with roving and TSP post units. Corrections officers will station at
entrance of protest area to ensure not prohibited items enter the protest area. Corrections Bus
will be parked at the entrance of the protest area.

    Dan Strickland (615) 418-3627

**RSCO**
Rutherford County Sheriffs Dept
Friday June 15th- Mounted Officers on call
Saturday June 16th - 4 Horse Mounted Officers for duration of protest activity

    Sgt. Jon Levi (615) 533-6083

## Local Law Enforcement and Emergency Service Commitments

• Dickson County Sheriff's Department will be on stand-by in the event that additional personnel are needed to control the protest event.

• Local Dickson County EMS is aware of the event, and prepared if needed.

## Pre-Event Staging & Preparedness

• Pre-event staging and preparedness will begin one week prior to the American Renaissance Conference. The Montgomery Bell State Park Rangers will increase patrols of the Inn and protest area. The Park Rangers will also perform daily detailed foot patrols of the area looking for planted weapons or contraband.

• Tennessee Bureau of Investigation (TBI) will installed three cameras at the Inn and protest areas to stream a live feed, and record the activity of the event. Live Feed Video access will be provided to limited departmental staff and assisting agencies to view the event in real time during the weekend.

• Montgomery Bell State Park will install fencing to create a physically defined protest area for individuals to exercise their first amendment rights. The protest area will be located in grassy area near the playground, above the upper parking lot of the Montgomery Bell Inn.  Fencing will be used to create a barrier between the two opposing groups to prevent any physical contact or conflict. Portable toilets will also be placed at the protest area to provide restrooms for the protest groups.
Signage will be installed posted prior to the event, and at the protest area stating "No weapons, bags, or masks."

• Tennessee Highway Patrol (THP) will have 4 Strike Teams (consisting of 12 members each) on site to assist with public safety. A THP patrol vehicle equipped with a license plate reader will be stationed as visitors enter the park.

• A visitor check-point will be set up prior to the event area to assist visitors with appropriate parking areas, and advise of prohibited items within the protest area. A second check-point will be stationed at the entrance of the protest area with at least four (4) rangers, and at least four (4) Department of Corrections officers ensuring that prohibited items are taken into the protest area.

- A THP bomb dog will sweep all areas of the Inn and protest area prior to the conference to ensure that the area is clear of any possible explosive devices.

## Personal Conduct

- All Tennessee State Park Rangers shall conduct themselves with the utmost professionalism at all times. All Rangers shall abide by departmental policy throughout the duration of the event. Rangers shall not engage in a political or cultural conversation with conference attendees or protestors. During this high profile event, no Ranger shall comment to the press or general public regarding personal views or opinions, or those of Tennessee State Government. All questions shall be directed to the Tennessee Department of Environment & Conservation Public Information Officer.

## Officer Social Media Policy

- There will be no posting on social media of any sort prior to or during this operation about this event. Any images/video etc. taken during work time is to be considered and treated as evidence.

## Aircraft Support:

- Request for air support must be routed through THP Emergency Services Coordinator, Sergeant Larry Hitchcock. (615)-347-7539

- Request for medical aircraft evacuation will be coordinated through Dickson County EMS dispatch. Vanderbilt Lifeflight or Air Evac will be local Air Medical Providers.

- Landing Zone (LZ) will be the softball field next to the Park Campground. See Map Below for details.



## Map of the Protest Site

# Montgomery Bell State Park
## MB_AMREN 2018



Date: 3/31/2018

## Medical, Mass Casualty Event, and Evacuation Plan

• In the event that a person(s) need to be removed from within the protest area for either Medical or law enforcement reasons, no less than four (4) rangers and/or troopers will enter the protest area to extract the individual. If there is a medical response needed within the protest area, Paramedic Ranger Jeremy Vaden will enter the protest area with no less than four (4) rangers and/or troopers. All incidents resulting in commissioned staff entering the protest area will be communicated to Incident Command. If further assistance or medical care (additional EMT's or Ambulance) is needed, Incident Command will communicate the request.

• In the event of a mass medical incident. A patient medical collection/transport location will be located near the tennis court area near the top of the protest area. This area will serve as locations for medical supplies, as well as quick access to evacuate patients out of the event location by ambulance. In the event of a mass medical, Rangers with EMT licensures will be dispatched to respond to the triage area, while remaining rangers and emergency personnel will evacuate the protest area.

• A separate collection/transport area will be positioned at the left service entrance to the inn near the conference center for the purpose of triage and care of conferee casualties in the event of a mass medical incident, or pickup loading area for individual medicals

• In the event of a fire alarm, bomb threat, or any emergency resulting in the evacuation of the Inn & Conference Center, all persons inside will be evacuated out the of the facility to the bridges on the east and west side of the Inn. All persons will be directed across the bridges to the cabin area on the west side of the inn, or the swim beach on the east side of the inn. Rangers working the east and west flanks of the Inn will provide direction.

• All persons in the protest area will be directed south back to their vehicles at the basketball court. Rangers stationed in the protest area will provide direction.

• The evacuation of all person on the property will be evacuated to a safe location away from the Inn & Conference Center, while ensuring that both conflicting groups do not engage in contact during such possible emergency.

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

## Local Contact Numbers:

Dickson Central Dispatch:

- 911 Emergency

- 615-446-8041 ext 4 non emergency


Dickson County Sheriff's Office:

- Sheriff Jeff Bledsoe


White Bluff Police Department:


Dickson County EMS

- Director Donnie Bear 615-446-1732

- 615-446-3701

Dickson County EMA

- Director Rob Fisher 615-446-3701

Burns Fire Dept.

- 615-446-7911

White Bluff Fire Dept.

- Chief Jerry Deal

- 615-797-2781

Dickson Fire Dept.

- Chief Richard Greer

- 615-446-6331

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

# Tennessee State Parks / TCA Code Reference

TSP Rules and Regulations:

11-1-108. 11-1-109.

Violation of rules and regulations punishable as misdemeanor.

(a)  Any violation of rules and regulations for the care and management of such properties as may be made under the authority of § 11-1-108 is a Class C misdemeanor.

(b)  In addition to the criminal penalty in subsection (a), the general assembly finds that it is appropriate that there be civil sanctions as well. Any person who does any of the following acts or omissions is subject to a civil penalty of up to ten thousand dollars ($10,000) per day for each day during which the act or omission continues or occurs:

   (1)  Any damage or vandalism to any state park;

   (2)  The intentional removal or destruction in state parks of any rare, threatened or endangered species of plants as provided in §§ 70-8-304(2) and 70-8-305, and in all rules and regulations promulgated pursuant to those sections; or

   (3)  Any other violation of this part or the rules promulgated under this part.

(c)  The commissioner, through the attorney general and reporter, may institute proceedings for assessment in the chancery court of Davidson County or in the chancery court of the county in which all or part of the violation occurred, in the name of the department. In any such action, the commissioner may also recover, in addition to the civil penalty assessed under subsections (b) and (d), for any damages to the state parks that were the result of the activity.

(d)  In assessing the civil penalty, the court may consider the following factors:

   (1)  Whether the civil penalty imposed will be a substantial economic deterrent to the illegal activity;

   (2)  Damages to the state park, including compensation for loss or destruction of any part of the area, resulting from the violation, as well as expenses involved in enforcing this section and the costs involved in rectifying any damage;

   (3)  The cause of the violation; and

   (4)  Any economic benefit gained by the violator.

(e)  Any civil penalties paid to the state pursuant to this section shall be deposited in the state park fund created by § 11-3-302.

CONFIDENTIAL – Law Enforcement Sensitive "FOUO"

(f)  No provision of this section shall be construed to restrict the state from recovering civil damages to state property as provided by law.

[Acts 1925, ch. 55, § 5; Shan. Supp., § 3047a5; Code 1932, § 5200; T.C.A. (orig. ed.), § 11-109; Acts 1989, ch. 591, § 113; 2007, ch. 486, § 1.]

## Common TCA Codes:

39-17-302. Riot.

(a) A person commits an offense who knowingly participates in a riot.

(b) A violation of this section is a Class A misdemeanor.

HISTORY: Acts 1989, ch. 591, § 1.

39-17-303. Aggravated riot.

(a) A person commits an offense who:

(1) Knowingly participates in a riot; and

(2) As a result of the riot a person other than one (1) of the participants suffers bodily injury or substantial property damage occurs.

(b) A violation of this section is a Class E felony.

HISTORY: Acts 1989, ch. 591, § 1; 1990, ch. 1030, § 35.

39-17-304. Inciting to riot.

(a) A person commits an offense who incites or urges three (3) or more persons to create or engage in a riot.

(b) A violation of this section is a Class A misdemeanor.

39-17-305. Disorderly conduct.

(a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm;

(1) Engages in fighting or in violent or threatening behavior;

(2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or

(3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

(c) A violation of this section is a Class C misdemeanor.

HISTORY: Acts 1989, ch. 591, § 1.

39-17-306. Disrupting meeting or procession.

(a) A person commits an offense if, with the intent to prevent or disrupt a lawful meeting, procession, or gathering, the person substantially obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance.

(b) A violation of this section is a Class B misdemeanor.

HISTORY: Acts 1989, ch. 591, § 1.

39-17-307. Obstructing highway or other passageway.

(a) A person commits an offense who, without legal privilege, intentionally, knowingly or recklessly:

(1) Obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, or hallway to which the public, or a substantial portion of the public, has access; or any other place used for the passage of persons, vehicles or conveyances, whether the obstruction arises from the person's acts alone or from the person's acts and the acts of others; or

(2) Disobeys a reasonable request or order to move issued by a person known to be a law enforcement officer, a firefighter, or a person with authority to control the use of the premises to:

(A) Prevent obstruction of a highway or passageway; or

(B) Maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot or other hazard.

(b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property.

(c) An offense under this section is a Class C misdemeanor.

(d) (1) It is an affirmative defense to prosecution under this section, which must be proven by a preponderance of the evidence, that:

(A) Solicitation and collection of charitable donations at a highway or street intersection were undertaken by members of an organization that has received a determination of exemption from the internal revenue service under 26 U.S.C. § 501(c)(3) or (4);

(B) The members of the organization undertook reasonable and prudent precautions to prevent both disruption of traffic flow and injury to person or property; and

(C) The solicitation and collection at the specific time and place and the specific precautions were proposed in advance to, and received the prior written approval of, the administrative head of the local law enforcement agency in whose jurisdiction the intersection is located.

(2) (Removed)

(3) No liability for any accident or other occurrence that arises from solicitations shall attach to the sheriff or government involved in issuing the permit, but shall be borne solely by the organization obtaining the permit.

(4) This subsection (d) shall not be construed to supersede or affect any ordinance relative to collecting donations at public intersections in effect on July 1, 1993.

(5) Any municipality by ordinance may prohibit roadblocks within its corporate limits notwithstanding this subsection (d).

HISTORY: Acts 1989, ch. 591, § 1; 1993, ch. 148, §§ 1-5.


39-17-309. Civil rights intimidation.

(a) The general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment and bodily injury caused by the activities of groups and individuals. It is not the intent of this section to interfere with the exercise of rights protected by the constitution of the United States. The general assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any subject whatsoever and to associate with others who share similar beliefs. The general assembly further finds that the advocacy of unlawful acts by groups or individuals against other persons or groups for the purpose of inciting and provoking damage to property and bodily injury or death to persons is not constitutionally protected, poses a threat to public order and safety, and should be subject to criminal sanctions.

(b) A person commits the offense of intimidating others from exercising civil rights who:

(1) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee;

(2) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee;

(3) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee; or

(4) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee.

(c) It is an offense for a person to wear a mask or disguise with the intent to violate subsection (b).

(d) A violation of subsection (b) is a Class D felony. A violation of subsection (c) is a Class A misdemeanor.

(e) The penalties provided in this section for intimidating others from exercising civil rights do not preclude victims from seeking any other remedies, criminal or civil, otherwise available under law.

HISTORY: Acts 1989, ch. 591, § 1; 1990, ch. 984, § 1.

39-17-310. Public intoxication.

(a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance, controlled substance analogue or any other intoxicating substance to the degree that:

(1) The offender may be endangered;

(2) There is endangerment to other persons or property; or

(3) The offender unreasonably annoys people in the vicinity.

(b) A violation of this section is a Class C misdemeanor.

HISTORY: Acts 1989, ch. 591, § 1; 2012, ch. 848, § 16.

39-17-311. Desecration of venerated object.

(a) A person commits an offense who intentionally desecrates:

(1) A place of worship or burial; or

(2) A state or national flag.

(b) A violation of this section is a Class A misdemeanor.

HISTORY: Acts 1989, ch. 591, § 1.

39-17-314. Civil disorder.

(a) As used in this section, unless the context otherwise requires:

(1) "Civil disorder" means any public disturbance involving acts of violence by an assemblage of two (2) or more persons which acts cause an immediate danger of or result in damage or injury to the property or person of any other individual;

(2) "Governmental military force" means the:

(A) National guard as defined in 10 U.S.C. § 101(9);

(B) Organized militia of any state or territory of the United States, the commonwealth of Puerto Rico, or the District of Columbia, not included within the definition of "national guard"; and

(C) Armed forces of the United States; and

(3) "Law enforcement agency" means a governmental unit of one (1) or more persons employed full time or part time by the state or federal government, or political subdivision of the state or federal government, for the purpose of preventing and detecting crime and enforcing laws or local ordinances and the employees of which are authorized to make arrests for crimes while acting within the scope of their authority.

(b) A person commits an offense who assembles with one (1) or more persons for the purpose of training or instructing in the use of, or practicing with, any technique or means capable of causing property damage, bodily injury or death with the intent to employ such training, instruction or practice in the commission of a civil disorder.

(c) A violation of this section is a Class D felony.

(d) (1) Nothing contained in this section makes unlawful any act protected by the constitution of Tennessee, or any act of a law enforcement officer that is performed in the lawful performance of the officer's official duties.

(2) Nothing contained in this section makes unlawful:

(A) Any activity of a governmental military force, the Tennessee wildlife resources agency, the department of correction or any law enforcement agency;

(B) Any activity intended to teach or practice self-defense or self-defense techniques, such as karate clubs or self-defense clinics, and similar lawful activity;

(C) Any facility, program or lawful activity related to firearms instruction and training intended to teach the safe handling and use of firearms; or

(D) Any other lawful sports or activities related to the individual recreational use or possession of firearms, including, but not limited to, hunting activities, target shooting, self-defense, firearms collection or any organized activity, including, but not limited to, any hunting club, rifle club, rifle range or shooting range that does not include a conspiracy as defined under the laws of this state, or the knowledge of or the intent to cause or further a civil disorder.

(e) Nothing contained in this section makes unlawful any practice or drill of an organization whose purpose is the reenactment of battles for historic purposes or of ceremonial organizations of a military nature.


39-17-1307. Unlawful carrying or possession of a weapon.

(a) (1) A person commits an offense who carries, with the intent to go armed, a firearm or a club.

(2) (A) The first violation of subdivision (a)(1) is a Class C misdemeanor, and, in addition to possible imprisonment as provided by law, may be punished by a fine not to exceed five hundred dollars ($500).

(B) A second or subsequent violation of subdivision (a)(1) is a Class B misdemeanor.

(C) A violation of subdivision (a)(1) is a Class A misdemeanor if the person's carrying of a handgun occurred at a place open to the public where one (1) or more persons were present.

(b) (1) A person commits an offense who unlawfully possesses a firearm, as defined in § 39-11-106, and:

(A) Has been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon; or

(B) Has been convicted of a felony drug offense.

(2) An offense under subdivision (b)(1)(A) is a Class C felony.

(3) An offense under subdivision (b)(1)(B) is a Class D felony.

(c) (1) A person commits an offense who possesses a handgun and has been convicted of a felony.

(2) An offense under subdivision (c)(1) is a Class E felony.

(d) (1) A person commits an offense who possesses a deadly weapon other than a firearm with the intent to employ it during the commission of, attempt to commit, or escape from a dangerous offense as defined in § 39-17-1324.

(2) A person commits an offense who possesses any deadly weapon with the intent to employ it during the commission of, attempt to commit, or escape from any offense not defined as a dangerous offense by § 39-17-1324.

(3) (A) Except as provided in subdivision (d)(3)(B), a violation of this subsection (d) is a Class E felony.

(B) A violation of this subsection (d) is a Class E felony with a maximum fine of six thousand dollars ($6,000), if the deadly weapon is a switchblade knife.

(e) (1) It is an exception to the application of subsection (a) that a person is carrying or possessing a firearm or firearm ammunition in a motor vehicle if the person:

(A) Is not prohibited from possessing or receiving a firearm by 18 U.S.C. § 922(g) or purchasing a firearm by § 39-17-1316; and

(B) Is in lawful possession of the motor vehicle.

(2) As used in this subsection (e):

(A) "Motor vehicle" has the same meaning as defined in § 55-1-103;

(B) "Motor vehicle" does not include any motor vehicle that is:

(i) Owned or leased by a governmental or private entity that has adopted a written policy prohibiting firearms or ammunition not required for employment within such a motor vehicle; and

(ii) Provided by such entity to an employee for use during the course of employment.

(f) (1) A person commits an offense who possesses a firearm, as defined in § 39-11-106(a), and:

(A) Has been convicted of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921, and is still subject to the disabilities of such a conviction;

(B) Is, at the time of the possession, subject to an order of protection that fully complies with 18 U.S.C. § 922(g)(8); or

(C) Is prohibited from possessing a firearm under any other state or federal law.

(2) If the person is licensed as a federal firearms dealer or a responsible party under a federal firearms license, the determination of whether such an individual possesses firearms that constitute the business inventory under the federal license shall be determined based upon the applicable federal statutes or the rules, regulations and official letters, rulings and publications of the bureau of alcohol, tobacco, firearms and explosives.

(3) For purposes of this section, a person does not possess a firearm, including, but not limited to, firearms registered under the National Firearms Act, compiled in 26 U.S.C. § 5801 et seq., if the firearm is in a safe or similar container that is securely locked and to which the respondent does not have the combination, keys or other means of normal access.

(4) A violation of subdivision (f)(1) is a Class A misdemeanor and each violation constitutes a separate offense.

(5) If a violation of subdivision (f)(1) also constitutes a violation of § 36-3-625(h) or § 39-13-113(h), the respondent may be charged and convicted under any or all such sections.

39-17-1302. Prohibited weapons.

(a) A person commits an offense who intentionally or knowingly possesses, manufactures, transports, repairs or sells:

(1) An explosive or an explosive weapon;

(2) A device principally designed, made or adapted for delivering or shooting an explosive weapon;

(3) A machine gun;

(4) A short-barrel rifle or shotgun;

(5) A firearm silencer;

(6) Hoax device;

(7) Knuckles; or

(8) Any other implement for infliction of serious bodily injury or death that has no common lawful purpose.

(b) It is a defense to prosecution under this section that the person's conduct:

(1) Was incident to the performance of official duty and pursuant to military regulations in the army, navy, air force, coast guard or marine service of the United States or the Tennessee national guard, or was incident to the performance of official duty in a governmental law enforcement agency or a penal institution;

(2) Was incident to engaging in a lawful commercial or business transaction with an organization identified in subdivision (b)(1);

(3) Was incident to using an explosive or an explosive weapon in a manner reasonably related to a lawful industrial or commercial enterprise;

(4) Was incident to using the weapon in a manner reasonably related to a lawful dramatic performance or scientific research;

(5) Was incident to displaying the weapon in a public museum or exhibition;

(6) Was licensed by the state of Tennessee as a manufacturer, importer or dealer in weapons; provided, that the manufacture, import, purchase, possession, sale or disposition of weapons is authorized and incident to carrying on the business for which licensed and is for scientific or research purposes or sale or disposition to an organization designated in subdivision (b)(1); or

(7) Involved acquisition or possession of a sawed-off shotgun, sawed-off rifle, machine gun or firearm silencer that is validly registered to the person under federal law in the National Firearms Registration and Transfer Records. A person who acquires or possesses a firearm registered as required by this subdivision (b)(7) shall retain proof of registration.

(8) [Deleted by 2014 amendment, effective July 1, 2014]

(c) It is an affirmative defense to prosecution under this section that the person must prove by a preponderance of the evidence that:

(1) The person's conduct was relative to dealing with the weapon solely as a curio, ornament or keepsake, and if the weapon is a type described in subdivisions (a)(1)-(5), that it was in a nonfunctioning condition and could not readily be made operable; or

(2) The possession was brief and occurred as a consequence of having found the weapon or taken it from an aggressor.

(d) (1) An offense under subdivision (a)(1) is a Class B felony.

(2) An offense under subdivisions (a)(2)-(5) is a Class E felony.

(3) An offense under subdivision (a)(6) is a Class C felony.

(4) An offense under subdivisions (a)(7)-(8) is a Class A misdemeanor.

39-17-1359. Prohibition at certain meetings -- Posting notice.

(a) (1) Except as provided in § 39-17-1313, an individual, corporation, business entity or local, state or federal government entity or agent thereof is authorized to prohibit the possession of weapons by any person who is at a meeting conducted by, or on property owned, operated, or managed or under the control of the individual, corporation, business entity or government entity.

(2) The prohibition in subdivision (a)(1) shall apply to any person who is authorized to carry a firearm by authority of § 39-17-1351.

(b) (1) Notice of the prohibition permitted by subsection (a) shall be accomplished by displaying one (1) or both of the notices described in subdivision (b)(3) in prominent locations, including all entrances primarily used by persons entering the property, building, or portion of the property or building where weapon possession is prohibited. Either form of notice used shall be of a size that is plainly visible to the average person entering the building, property, or portion of the building or property, posted.

(2) The notice required by this section shall be in English, but a duplicate notice may also be posted in any language used by patrons, customers or persons who frequent the place where weapon possession is prohibited.

(3) (A) If a sign is used as the method of posting, it shall contain language substantially similar to the following:

AS AUTHORIZED BY T.C.A. § 39-17-1359, POSSESSION OF A WEAPON ON POSTED PROPERTY OR IN A POSTED BUILDING IS PROHIBITED AND IS A CRIMINAL OFFENSE.

(B) As used in this section, "language substantially similar to" means the sign contains language plainly stating that:

(i) The property is posted under authority of Tennessee law;

(ii) Weapons or firearms are prohibited on the property, in the building, or on the portion of the property or building that is posted; and

(iii) Possessing a weapon in an area that has been posted is a criminal offense.

(C) A building, property or a portion of a building or property, shall be considered properly posted in accordance with this section if one (1) or both of the following is displayed in prominent locations, including all entrances primarily used by persons entering the property, building, or portion of the property or building where weapon possession is prohibited:

(i) The international circle and slash symbolizing the prohibition of the item within the circle; or

(ii) The posting sign described in this subdivision (b)(3).

(c) (1) It is an offense to possess a weapon in a building or on property that is properly posted in accordance with this section.

(2) Possession of a weapon on posted property in violation of this section is a Class B misdemeanor punishable by fine only of five hundred dollars ($500).

(d) Nothing in this section shall be construed to alter, reduce or eliminate any civil or criminal liability that a property owner or manager may have for injuries arising on their property.

(e) This section shall not apply to title 70 regarding wildlife laws, rules and regulations.

(f) This section shall not apply to the grounds of any public park, natural area, historic park, nature trail, campground, forest, greenway, waterway or other similar public place that is owned or operated by the state, a county, a municipality or instrumentality thereof. The carrying of firearms in those areas shall be governed by § 39-17-1311.

HISTORY: Acts 1996, ch. 905, § 11; 2000, ch. 929, § 1; 2009, ch. 428, § 4; 2010, ch. 1009, § 3; 2013, ch. 16, § 2.


55-8-127. Restrictions on use of controlled-access roadway.                    (a) The department of transportation and local authorities may, with respect to any controlled-access roadway under their respective jurisdictions, prohibit the use of that roadway by pedestrians, bicycles or other nonmotorized traffic or by any person operating a motor-driven cycle.                                        (b) The department or the local authority adopting any such prohibitory regulation shall erect and maintain official signs on the controlled-access roadway on which the regulations are applicable, and when the signs are erected, a person who disobeys the restrictions stated on the signs commits a Class C

misdemeanor. HISTORY: Acts 1955, ch. 329, § 26; impl. am. Acts 1959, ch. 9, § 3; impl. am. Acts 1972, ch. 829, § 7; T.C.A., § 59-827; Acts 1981, ch. 264, § 12; 1989, ch. 591, § 113.

39-14-408. Vandalism.

(a) Any person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent is guilty of an offense under this section.

(b) For the purposes of this section:

(1) "Damage" includes, but is not limited to:

(A) Destroying, polluting or contaminating property; or

(B) Tampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person; and

(2) "Polluting" is the contamination by manmade or man-induced alteration of the chemical, physical, biological or radiological integrity of the atmosphere, water, or soil to the material injury of the right of another. Pollutants include dredged soil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal and agricultural waste.

(c) Acts of vandalism are to be valued according to the provisions of § 39-11-106(a)(36) and punished as theft under § 39-14-105.

39-13-101. Assault.

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

(b) (1) Assault is a Class A misdemeanor unless the offense is committed under subdivision (a)(3), in which event assault is a Class B misdemeanor; provided, that, if the offense is committed against a law enforcement officer under this section, then the maximum fine shall be five thousand dollars ($5,000).

(2) In addition to any other punishment that may be imposed for a violation of this section, if the relationship between the defendant and the victim of the assault is such that the victim is a victim as defined in § 36-3-601(8), and if, as determined by the court, the defendant possesses the ability to pay a fine in an amount not in excess of two hundred dollars ($200), then the court shall impose a fine at the level of the defendant's ability to pay, but not in excess of two hundred dollars ($200). The additional fine shall be paid to the clerk of the court imposing sentence, who shall transfer it to the state treasurer, who

shall credit the fine to the general fund. All fines so credited to the general fund shall be subject to appropriation by the general assembly for the exclusive purpose of funding family violence shelters and shelter services. Such appropriation shall be in addition to any amount appropriated pursuant to § 67-4-411.

39-13-102. Aggravated assault.

(a)  A person commits aggravated assault who:

(1)  Intentionally or knowingly commits an assault as defined in § 39-13-101 and:

(A)  Causes serious bodily injury to another; or

(B)  Uses or displays a deadly weapon; or

(2)  Recklessly commits an assault as defined in § 39-13- 101(a)(1), and:

(A)  Causes serious bodily injury to another; or

(B)  Uses or displays a deadly weapon.

(b)  A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.

(c)  A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.

(d)  A person commits aggravated assault who, with intent to cause physical injury to any public employee or an employee of a transportation system, public or private, whose operation is authorized by title 7, chapter 56, causes physical injury to the employee while the public employee is performing a duty within the scope of the public employee's employment or while the transportation system employee is performing an assigned duty on, or directly related to, the operation of a transit vehicle.

(e)  (1)  Aggravated assault under subsection (d) is a Class A misdemeanor. Aggravated assault under subdivision (a)(1) or subsection (b) or (c) is a Class C felony. Aggravated assault under subdivision (a)(2) is a Class D felony. However, if an offense under subdivision (a)(1) or (a)(2) or subsection (c) is committed against a law enforcement officer, then the maximum fine shall be fifteen thousand dollars ($15,000).

(2)  In addition to any other punishment that may be imposed for a violation of this section, if the relationship between the defendant and the victim of the assault is such that the victim is a victim as defined in § 36-3-601(8), and if, as determined by the court, the defendant possesses the ability to pay a fine in an amount not in excess of two hundred dollars ($200), then the court shall impose a fine at the level of the defendant's ability to pay, but not in excess of two hundred dollars ($200). The additional fine shall be paid to the clerk of the court imposing sentence, who shall transfer it to the state treasurer, who shall credit the fine to the general fund. All fines so credited to the general fund shall be subject to

appropriation by the general assembly for the exclusive purpose of funding family violence shelters and shelter services. Such appropriation shall be in addition to any amount appropriated pursuant to § 67-4-411.

39-17-1359. Prohibition at certain meeting -- Posted notice -- Handgun carry permit holder.

(a) (1) Except as provided in ◊ 39-17-1313, an individual, corporation, business entity or local, state or federal government entity or agent thereof is authorized to prohibit the possession of weapons by any person who is at a meeting conducted by, or on property owned, operated, or managed or under the control of the individual, corporation, business entity or government entity.

(2) The prohibition in subdivision (a)(1) shall apply to any person who is authorized to carry a firearm by authority of ◊ 39-17-1351.

(b) (1) Notice of the prohibition permitted by subsection (a) shall be accomplished by displaying the notice described in subdivision (b)(3) in prominent locations, including all entrances primarily used by persons entering the property, building, or portion of the property or building where weapon possession is prohibited. The notice shall be plainly visible to the average person entering the building, property, or portion of the building or property, posted.

(2) The notice required by this section shall be in English, but a duplicate notice may also be posted in any language used by patrons, customers, or persons who frequent the place where weapon possession is prohibited.

(3) (A) A sign shall be used as the method of posting. The sign shall include the phrase "NO FIREARMS ALLOWED", and the phrase shall measure at least one inch (1") high and eight inches (8") wide. The sign shall also include the phrase "As authorized by T.C.A. ◊ 39-17-1359".

(B) The sign shall include a pictorial representation of the phrase "NO FIREARMS ALLOWED" that shall include a circle with a diagonal line through the circle and an image of a firearm inside the circle under the diagonal line. The entire pictorial representation shall be at least four inches (4") high and four inches (4") wide. The diagonal line shall be at a forty-five degree (45 degrees) angle from the upper left to the lower right side of the circle.

(4) An individual, corporation, business entity, or government entity that, as of January 1, 2015, used signs to provide notice of the prohibition permitted by subsection (a) shall have until January 1, 2018, to replace existing signs with signs that meet the requirements of subdivision (b)(3).

(c) (1) It is an offense to possess a weapon in a building or on property that is properly posted in accordance with this section.

(2) Possession of a weapon on posted property in violation of this section is a Class B misdemeanor punishable by fine only of five hundred dollars ($500).

(d) Nothing in this section shall be construed to alter, reduce or eliminate any civil or criminal liability that a property owner or manager may have for injuries arising on their property.

(e) This section shall not apply to title 70 regarding wildlife laws, rules and regulations.

(f) Except as provided in subsection (g), this section shall not apply to the grounds of any public park, natural area, historic park, nature trail, campground, forest, greenway, waterway or other similar public place that is owned or operated by the state, a county, a municipality or instrumentality thereof. The carrying of firearms in those areas shall be governed by ᴊ 39-17-1311.

(g)  (1) Except as provided in subdivision (g)(2), nothing in this section shall authorize an entity of local government or a permittee thereof to enact or enforce a prohibition or restriction on the possession of a handgun by a handgun carry permit holder on property owned or administered by the entity unless the following are provided at each public entrance to the property:

 (A) Metal detection devices;

 (B) At least one (1) law enforcement or private security officer who has been adequately trained to conduct inspections of persons entering the property by use of metal detection devices; and

 (C) That each person who enters the property through the public entrance when the property is open to the public and any bag, package, and other container carried by the person is inspected by a law enforcement or private security officer described in subdivision (g)(1)(B) or an authorized representative with the authority to deny entry to the property.

(2) Subdivision (g)(1) does not apply to:

(A) Facilities that are licensed under title 33, 37, or 68;

(B) Property on which firearms are prohibited by ᴊ 39-17-1309 or ᴊ 39-17-1311(b)(1)(H)(ii);

(C) Property on which firearms are prohibited by ᴊ 39-17-1306 at all times regardless of whether judicial proceedings are in progress;

(D) Buildings that contain a law enforcement agency, as defined in ᴊ 39-13-519;

(E) Libraries; or

(F) Facilities that are licensed by the department of human services, under title 71, chapter 3, part 5, and administer a Head Start program.