# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| NEW CENTURY FOUNDATION and SAMUEL JARED TAYLOR, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:18-cv-00839 |
| | ) | Judge Aleta A. Trauger |
| MICHAEL ROBERTSON, in his official capacity as director of Tennessee Department of Environment and Conservation, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM and ORDER

Before the court is the plaintiffs' Motion for Attorney's Fees, seeking fees and certain costs in the total amount of $56,414.30. (Doc. No. 76.) The defendant does not oppose the motion in its entirety, but he has filed a Response (Doc. No. 77), arguing that the amount of fees requested by the plaintiffs is excessive. The plaintiffs' Reply (Doc. No. 78) concedes that a small amount of the total requested should be deducted but otherwise defends the originally requested amount.

For the reasons set forth herein, the court will grant the motion in part, disallowing the costs requested and awarding fees in the amount of $46,370.30.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs brought suit under 42 U.S.C. § 1983 against defendant Michael Robertson in his official capacity as the director of the Tennessee Department of Environment and Conservation, alleging violations of their rights under the First Amendment to the United States Constitution. In their original Complaint, the plaintiffs sought declaratory and injunctive relief and

an award of attorney's fees under 42 U.S.C. § 1988(b). (Doc. No. 1.) The plaintiffs sought and were granted a preliminary injunction in 2018. (Doc. No. 29.)

In early 2019, the plaintiffs filed an Amended Complaint that, among other things, added claims for damages against Robertson in his individual capacity. (Doc. No. 39.) In September 2019, the court entered a Memorandum and Order ruling upon the summary judgment motions filed by both the defendant and the plaintiffs. (Doc. Nos. 73, 74.) More specifically, the court found that the plaintiffs had established that they were entitled to the permanent injunctive and declaratory relief that they sought against the defendant in his official capacity but that the defendant, insofar as he was sued in his individual capacity for damages, was entitled to qualified immunity. The claim against the defendant in his individual capacity was dismissed, and judgment was entered in favor of the plaintiffs on their claims against the defendant in his official capacity. In addition, while noting that the plaintiffs were "clearly the prevailing party," the court denied the plaintiffs' vague request that the court schedule a hearing to determine the amount of attorney's fees and costs to be paid by the defendant (Doc. No. 73, at 32; *see also* Doc. No. 59, at 25) and, instead, directed the plaintiffs to file a properly supported motion for attorney's fees in accordance with Rule 54 of the Federal Rules of Civil Procedure and Rule 54.01(b) of the Local Rules of this court.

The plaintiffs thereafter filed their timely Motion for Attorney's Fees.

## II.     LEGAL STANDARD

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832, (2011). Thus, courts do not award "fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001)

(citation omitted). In 42 U.S.C. § 1988(b), Congress "explicitly empowered the courts to grant fees to parties who win § 1983 actions." *Id.* Under § 1988(b), the "prevailing party" in an action to enforce civil rights under § 1983 may recover "a reasonable attorney's fee as part of the costs" of litigation. *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014). To be considered a prevailing party, a litigant must have "receive[d] at least some relief on the merits of his claim" amounting to "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon Bd. & Care Home*, 532 U.S. at 603–04 (internal quotation marks and alterations in original omitted).

A civil rights plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to render him a prevailing party. *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010). However, if a plaintiff's unmeritorious claims are "based on different facts and different legal theories" than his meritorious claims, then the court must treat them "as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). On the other hand, if both the meritorious and unmeritorious claims "arise out of a common core of facts, and involve related legal theories," a court should not exempt from its fee award the hours spent on the claims that did not succeed. *Id.* at 789. Instead, the court should consider "the degree of success obtained." *Id.* (quoting *Hensley*, 461 U.S. at 436). The Sixth Circuit has indicated that, for a district court tasked with determining whether two claims are related, it may be helpful to consider "whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from" that which gave rise to the plaintiff's successful claim. *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006) (internal quotation marks omitted).

An attorney who achieves "excellent results" is entitled to a full fee, regardless of whether she succeeds on every related claim raised. *Waldo v. Consumers Energy, Co.*, 726 F.3d 802, 822 (6th Cir. 2013). However, when the plaintiff's success is "limited," the court may "exercise [its] equitable discretion . . . to arrive at a reasonable fee award" in light of the hours expended. *Tex. State Teachers Ass'n*, 489 U.S. at 789. In no case should a court reduce a full fee award "simply by using a ratio of successful claims to claims raised." *Waldo*, 726 F.3d at 822.

## III. DISCUSSION

### A. The Plaintiffs' Motion for Attorney's Fees

The plaintiffs request a total fee award in the amount of $56,414.30. This total is derived from the work of three different attorneys: Van R. Irion, Kyle J. Bristow, and Charles H. Kennedy.

The Supreme Court has cautioned that a request for attorney's fees "should not result in a second major litigation." *Hensley*, 461 U.S. at 437. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. This two-step calculation, known as the lodestar amount, provides an "initial estimate of the value of a lawyer's services." *Id.* However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Id.* at 434. After determining the lodestar amount, the court may adjust the fee upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). However, "trial courts need not, and should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838. "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.* Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Kyle Bristow is not plaintiffs' lead counsel, but he drafted most of the court filings and

performed most of the legal research involved in the case. He charged the plaintiffs $200 per hour for his work and spent a total of 133.3 hours on the case between September 2, 2018 and September 20, 2019, for which the plaintiffs paid him $26,660. (*See* Doc. Nos. 76-6 (Attorney-Client Legal Servs. Agreement), 76-7 (billing records), 76-8 (Bristow Declaration).) He entered an appearance in this court by filing a Motion for Admission *Pro Hac Vice* on January 25, 2019 (Doc. No. 50), but his billing records reflect that he billed the plaintiffs for approximately 66 hours of work performed prior to January 25, 2019. (Doc. No. 76-7.)

Van Irion is lead counsel for the plaintiffs. He charged an hourly rate of $300 per hour and $50 per hour "for administrative work performed by his staff." (Doc. No. 76, at 5; Doc. No. 76-3 (Engagement Letter), 76-4 (invoices), 76-5 (Irion Declaration).) According to the billing records and invoices attached to the plaintiff's motion, the plaintiffs paid Irion $25,749.30 for his legal services, which equates to approximately 85 hours of work.

Attorney Charles Kennedy charged the plaintiffs $450 per hour for the 7.9 hours he spent in preparing for and attending the depositions of plaintiff Jared Taylor and his colleague Devin Saucier in Washington, D.C., for a total fee of $3,555. (*See* Doc. No. 76-1.) The plaintiffs also paid his law firm an additional $450 to reserve a conference room in which the depositions took place. (*Id.*)

While there is no question here that the plaintiffs are the prevailing party, the defendant submits that the amount of fees requested is excessive and should be reduced.[1] The defendant argues, primarily, that some of the hours of time billed by plaintiffs' counsel should be excluded from the lodestar calculation and, secondarily, that, once the court calculates a basic lodestar

---

[1] The defendant does not object to the hourly rate charged by any of the attorneys, and the court finds that they are reasonable based on the prevailing rates for attorneys with their respective levels of experience and in the relevant markets.

amount equal to the number of compensable hours multiplied by a reasonable hourly rate, the court should make a downward adjustment of that figure to reflect the plaintiffs' partial win in this case.

More particularly, the defendant submits that the fee amount should be reduced for one or more of the following reasons: (1) attorney Charles Kennedy is a trustee of plaintiff New Century Foundation ("NCF") and, as such, technically a party to the lawsuit, and *pro se* litigants are not entitled to recover fees; (2) attorney Kyle Bristow did not enter an appearance in the case until January 25, 2019 and should not recover fees for any work performed on the case prior to that date; (3) the plaintiffs should not recover fees and expenses incurred on claims wholly unrelated to the claims at issue in this case; (4) the plaintiffs should not recover fees for activities with respect to which the billing records are insufficiently detailed; (5) the attorneys' charges for "Admin" or administrative activities should not be allowed; (6) compensation for fees that are redundant, excessive, and unnecessary should not be permitted; and (7) some of the "costs" sought are not allowable.

## B.    The Fee Charged by Charles Kennedy

It is well settled that a *pro se* litigant, even one who happens to be an attorney, is not entitled to recover attorney's fees under 42 U.S.C. § 1988. *Kay v. Ehrler*, 499 U.S. 432, 436–37 (1991). The defendant asserts that Kennedy, as a trustee of NCF, is a "party" to this lawsuit and, as such, not entitled to recover attorney's fees incurred in representing "himself." The plaintiffs respond that Kennedy provided legal services on behalf of his law firm, the Kennedy Privacy Law Firm, which is a distinct legal entity from NCF, and that Kennedy himself, as a private individual, is legally distinct and separate from NCF.

Beyond citing to *Kay v. Ehrler*, the defendant has not pointed to any precedent supporting his position that the plaintiffs cannot recover fees paid to Kennedy because he is a trustee for NCF.

In *Kay*, while holding that an individual attorney who represented himself could not recover fees under § 1988, the Supreme Court strongly suggested that the rationale for not awarding attorney's fees to *pro se* litigants who are also attorneys does *not* apply to organizations: "[A]n organization is not comparable to a *pro se* litigant because the organization is always represented by counsel, whether in-house or *pro bono*, and thus, there is always an attorney-client relationship." *Kay*, 499 U.S. at 436 n.7. Although this statement in *Kay* was dictum, several federal courts, following *Kay*, have held that law firms represented by their own members can recover fees under various federal fee-shifting schemes. *See, e.g. Treasurer, Trustees of Drury Indus., Inc. Health Care Plan v. Godling*, 692 F.3d 888, 898 (8th Cir. 2012) (allowing attorney representing law firm to recover attorney's fees under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1)); *Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC*, 832 F.3d 50, 61 (1st Cir. 2016) (same, under Title VII); *Bond v. Blum*, 317 F.3d 385, 400 (4th Cir. 2003) (same, under the Copyright Act, 17 U.S.C. § 505), *abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016). Courts have likewise held, citing *Kay*, that a law firm that represented itself in a Freedom of Information Act ("FOIA") suit against the Department of Commerce could recover fees under FOIA's fee-shifting provision, 5 U.S.C. § 552(a)(4)(E), *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 326 (D.C. Cir. 2006); that a state's attorneys representing the state may be awarded attorney's fees under a fee-shifting statute, *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363 (7th Cir. 2000); and that in-house counsel representing the corporation for whom they work may be awarded attorney's fees, *Textor v. Bd. of Regents*, 711 F.2d 1387, 1396 (7th Cir. 1983).

*Kay*'s holding that an individual who represents herself is not entitled to a fee award was based on the Court's reasoning that "the word 'attorney' assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an

award under § 1988." *Kay*, 499 U.S. at 435–36 (footnote omitted). The Court also noted that the fee provision was designed to "enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Id.* at 436. Congress wanted to "ensur[e] the effective prosecution of meritorious claims," which it believed to be more likely when litigation decisions are informed by "the judgment of an independent third party." *Id.* at 437. But, as the courts considering the applicability of *Kay* to "circumstances where entities represent themselves through in-house or pro bono counsel" have recognized, an attorney-client relationship exists when "a member of an entity who is also an attorney represents the entity." *Bond*, 316 F.3d at 399–400. Although such a member is "interested in the affairs of the entity, he would not be so emotionally involved in the issues of the case so as to distort the rationality and competence that come[] from independent representation." *Id.* at 400. The law firm "still remains a business and professional entity distinct from its members, and the member representing the firm as an entity represents the firm's distinct interests in the agency relationship inherent in the attorney-client relationship." *Id.*; *see also Baker & Hostetler*, 473 F.3d at 325–26 (quoting *Bond*).

The rationale of *Bond* appears to apply here. Although the parties have not clarified the precise organizational structure of NCF, the Amended Complaint alleges that it is a trust established in the state of Kentucky and authorized to do business in the Commonwealth of Virginia, where it is headquartered. (Am. Compl., Doc. No. 39 ¶ 3.) As such, NCF is an entity that is distinct from its members or trustees. Charles Kennedy is not a named plaintiff in this action and maintains a separate professional identity as a lawyer operating through the Kennedy Privacy Law Firm. Moreover, regardless of whatever affiliation Kennedy may have with NCF, there is no question that he also represented plaintiff Jared Taylor, an individual, in this case.

Under these circumstances, the court finds that the rule applied and extended in *Kay*—that

a *pro se* litigant, even one who happens to be an attorney, is not entitled to recover attorney's fees under § 1988—has no application here. The defendant's objection to the fees charged by Kennedy on that basis is without merit.

**C.     The Work Performed by Kyle Bristow Before *Pro Hac Vice* Admission**

The defendant next objects that the plaintiffs cannot recover the fees they paid attorney Kyle Bristow for the hours of work performed by him before he filed his *pro hac vice* motion in this court on January 25, 2019, citing the previous opinion by the undersigned in *Lee v. Robinson, Reagan & Young, PLLC*, No. 3:14-CV-0748, 2015 WL 3442097 (M.D. Tenn. May 28, 2015).

The facts of *Lee* are different from those presented here, and this court's Local Rules were amended slightly in 2018, but the court's discussion of the question of when an attorney must seek admission *pro hac vice* in a particular case remains relevant. The Middle District of Tennessee's Local Rules governing *pro hac vice* admission to the court, states: "Any member in good standing of the bar of any other District Court of the United States who is not a resident of this District and who does not maintain an office in this District for the practice of law, may be permitted to appear and participate in a particular case in this Court," subject to certain provisions. M.D. Tenn. L.R. 83.01(b). The Local Rules further require that "*[a]ny attorney* representing a party in any civil action" file a separate Notice of Appearance with the Clerk of the Court "promptly upon undertaking the representation." L.R. 83.01(e)(1) (emphasis added); *see also Lee*, 2015 WL 3442097, at *3. Further, any attorney who fails to comply with the rules regarding attorney admission "is guilty of contempt of this Court and subjects himself to appropriate punishment therefore." L.R. 83.01(c)(3); *Lee*, 2015 WL 3442097, at *4.

This court in *Lee* did not conclude that the local rule was so strict that it required every attorney performing work on any case, no matter how peripheral, to enter an appearance. Rather,

drawing on the "small universe of federal cases" from other jurisdictions in which prevailing parties sought to recover fees paid to attorneys who had never entered an appearance in the relevant court, this court determined that the critical question, for purposes of determining whether such fees are compensable under statutes permitting the recovery of "reasonable attorney's fees," was whether the attorney was merely a "'consulting attorney,' for whom recovery for legal services might be permitted without admission to the local bar." *Lee*, 2015 WL 3442097, at \*4 (citing *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009); *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966) *Gsell v. Rubin and Yates, LLC*, 41 F. Supp. 3d 443 (E.D. Pa. 2014); and *Bilazzo v. Portfolio Recovery Assoc.*, 876 F. Supp. 2d 452 (D.N.J. 2012)).

The *Bilazzo* court, later followed by *Gsell*, applied a five-factor test for determining whether attorneys "had acted in a permissive 'consulting' role, which would entitle the plaintiff to recover their fees, or whether the non-admitted attorneys had actively participated in the case in violation of the local rules." *Lee*, 2015 WL 3442097, at \*5 (citing *Bilazzo*, 876 F. Supp. 2d at 464). Applying these factors, the court in *Bilazzo* concluded that a non-admitted attorney functions as a consultant when she:

> (1) refrains from any direct contact with the client; (2) refrains from any significant contact with opposing counsel; (3) does not sign pleadings or motions filed with the court, and does not draft a substantial portion of the pleadings—specifically the complaint; (4) engages almost exclusively in activities such as reviewing motions, preparing memos, editing documents, discussing litigation strategy with lead counsel, conducting legal research, and the like; and (5) records only a modest number of hours during the course of litigation as compared to that of lead counsel and other attorneys admitted to practice in the relevant jurisdiction.

*Id.* at \*5 (citing *Bilazzo*, 876 F. Supp. 2d at 464).

In *Lee*, this court did not expressly adopt the *Bilazzo* factors as determinative of the question. However, in reviewing the facts before it—including that the same law firm (Krohn & Moss) was involved in *Bilazzo*, *Gsell*, and *Lee* and the same attorney (Lee) was involved in both

*Gsell* and *Lee*—the court determined that the attorneys seeking fees in that case had "served as lead counsel to the plaintiff" but had "flagrantly failed to comply with Local Rule 83.01." *Lee*, 2015 WL 3442097, at *7. Moreover, because the particular attorneys and law firm involved in that case were "on notice of the court's local rules of admission and ha[d] previously been sanctioned for the same violation, under nearly identical circumstances," the court determined that a disciplinary sanction in the form of denying the recovery of attorney's fees in that case was appropriate. *Id.*

The plaintiffs argue that *Lee* does not apply here, because Bristow was functioning as merely a consulting attorney. The facts show that Kyle Bristow entered into a retention agreement directly with the plaintiff, and the agreement specifies that Bristow's involvement is limited to "[p]roviding drafting and legal research assistance to help . . . Attorney Van R. Irion . . . sue on behalf of Client . . . in relation to First Amendment-related discrimination" and that Bristow is only to "provide legal research and document-drafting assistance to Client's designated attorney of record for Client's legal matter," specifically Van Irion. (Doc. No. 76-6, at 2.) The agreement cites *Winterrowd* as holding that it is "ethical for an out-of-state attorney to provide legal research and document -drafting assistance to local counsel" and discloses that Bristow "is not a licensed Tennessee attorney or admitted to practice law before the federal courts of Tennessee" and, consequently, "can only provide advisory support, as described above." (*Id.*)

Consistent with the retention agreement, Bristow appears to have drafted a substantial portion of the pleadings and other court filings submitted prior to entry of his Notice of Appearance, including the Complaint, preliminary injunction motion, the plaintiffs' response to the defendant's Rule 12(b)(6) motion, and the Amended Complaint, among others. (Doc. No. 76-7.) However, he did not finalize, sign, or file them himself. While the billing records reflect that

he had significant contact with the client and Van Irion, Bristow appears not to have had any contact with opposing counsel until after he was admitted *pro hac vice*. Finally, he did not record a "modest" number of hours before being so admitted—rather, he recorded over 65 hours (to Irion's approximately 52 hours in the same timeframe).

The plaintiffs argue that Bristow "took his marching orders from Irion" and acted, "[i]n essence, . . . as a sophisticated paralegal." (Doc. No. 78, at 3.) The court finds, to the contrary, that these factors together reveal that, while Irion was lead counsel, Bristow functioned as something more than a consulting attorney and definitely more than a glorified paralegal. He role was more akin to that of a senior associate in a law firm, one who "actively participated in the case," but without entering a notice of appearance or seeking admission *pro hac vice*, in violation of the local rules. *Lee*, 2015 WL 3442097, at \*5. The local rules do not require that *only* lead counsel enter an appearance and be admitted to practice in this court. Rather, as set forth above, they require that "any attorney representing any party in a civil action" file a separate Notice of Appearance with the Clerk of the Court "promptly upon undertaking the representation." LR 83.01(f)(1). That did not happen in this case, and Bristow's failure to file his *pro hac vice* motion until five months into his representation of the plaintiffs in this case constituted a violation of the local rule.

Unlike the attorney in *Lee* and *Gsell*, however, Bristow has not been repeatedly sanctioned for functioning as lead counsel without ever entering a notice of appearance in a case. Moreover, although his participation in this case during the first several months was active and substantial, he was not lead counsel, and he does not appear to have been willfully attempting to circumvent the local rules. Importantly, he did eventually file a motion for admission *pro hac vice*, which the court granted on January 31, 2019. (Doc. Nos. 50, 52.) Judging from the fact that he did eventually enter an appearance, it may have become clear to both him and Irion that his role, as it had

developed over the first five months of his participation in the case, was more substantial than anticipated.

In any event, Bristow and Irion are both now on notice that it was not appropriate for Bristow to have participated in the representation of the plaintiffs in such a substantive manner without entering a notice of appearance and seeking permission to practice in this court *pro hac vice* much sooner than he did. The court does not, however, find that the circumstances warrant a sanction in the form of disallowing the fees accrued prior to the entry of Bristow's Notice of Appearance. The defendant's request that the court decline to award any amount of fees billed by Bristow during the first five months of his representation is, therefore, rejected.

### D.     Fees for Unrelated Claims

The defendant objects to any amount of fees sought for "matters completely unrelated to this lawsuit," referencing specifically two entries in Bristow's billing records and the $100 in fees related to those entries. The plaintiffs concede that one of these entries, for .3 hours of Bristow's time, is unrelated to this case and that the $60.00 in fees associated with that entry is not recoverable.

They do not concede that the second entry, worth $40, was incorrectly charged. The description for this entry, dated December 14, 2018, states only "Accounting emailed to Van," apparently referencing his billing accounting. (Doc. No. 76-7, at 4.) According to the plaintiffs, "Irion requested Bristow's time sheet for the instant case which is relevant to the instant case." (Doc. No. 78, at 4.) This matter is discussed below, in connection with the billing of administrative matters.

### E.    Vague Billing Entries

The defendant objects to the plaintiffs' recovery of fees in connection with billing entries that are insufficiently detailed to permit the court to ascertain that the time was reasonably spent on this matter.

In the Sixth Circuit, "[t]he key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (citation, internal quotation marks, and brackets omitted). Attorneys are not required to provide "great detail" about each activity, but "the general subject matter should be identified." *Id.* (citations omitted).

In *Imwalle*, the defendant objected to the plaintiff's fee request on the basis that counsel's billing statements were "vague and failed to identify the general subject matter of the activity involved," pointing to "entries such as 'Conference with,' 'Research,' 'Review file,' 'Review documents,' etc." *Id.* The district court found that the billing records submitted in support of the motion for attorney's fees were "of sufficient detail and probative value to enable the [c]ourt to determine with a high degree of certainty that the remaining hours were actually and reasonably expended in the prosecution of the action." *Id.* at 552–53. The appellate court agreed:

> Imwalle's counsel submitted 52 pages of detailed, itemized billing records that specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed. The time entries in counsel's billing statement are listed separately and are not lumped together. Each page of the billing record contains a heading identifying the client, client matter number, and client matter description, and the billing statement appears to have been computer-generated. Furthermore, the billing records appear to have been maintained contemporaneously with the completion of the work and indicate the general nature of the tasks performed.

. . . .

> Although some of the time entries in counsel's billing statement provide only the briefest description of the task completed, we have held that explicitly detailed descriptions are not required. Counsel's billing entries, when read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation, support the district court's determination that the hours charged were actually and reasonably expended in the prosecution of the litigation.

*Id.* at 553–54 (internal citations omitted).

Likewise in this case, the defendants object to some of the descriptions of the activities billed by Bristow as insufficiently specific, including "Phone call with Devin," "Exchanged emails with Clients," "Received emails from clients and Van," "Legal Research. Emailed Van and clients," and similar. (*See* Doc. No. 77, at 5–6.) Many of these entries are explained to some extent by context. For example, the entry "Phone call with Van. Phone call with clients," for which .3 hours was billed on January 15, 2019, is flanked by entries of the same date stating: "Exchanged emails with Van. Received evidence," and "Began drafting motion for compliance with preliminary injunction." (*Id.*)

As in *Imwalle*, these entries, when considered in the context of the billing records as a whole and within the litigation timeline, support the conclusion that "the hours charged were actually and reasonably expended in the prosecution of the litigation." 515 F.3d at 554. Bristow did not engage wholesale in block billing, and it appears that he maintained contemporaneous records of his time and the nature of the work performed. The court finds that this objection, too, is without merit.

### F. Fees Charged for Administrative Activities

The defendant also objects to charges associated with what appear to be purely administrative tasks, including billing entries by Irion that state: "Admin (mail copies)," "Admin (copies)," and "Admin (scan and forward)," and billing entries by Bristow for such matters as

converting emails to PDF format, downloading discovery documents, and scanning documents mailed to him. The court finds that Bristow's billing for "emailing accounting to Van," referenced above, falls within this category as well.

The defendant is correct that "[p]urely clerical or secretarial tasks, that is, non-legal work, should not be billed . . . regardless of who performs the work." *Adkins v. Comm'r of Soc. Sec.*, 393 F. Supp. 3d 713, 720 (N.D. Ohio 2019) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)); *see also Hensley*, 461 U.S. at 437 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."); *Gibson v. Scott*, No. 2:12-CV-1128, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014) ("A 'purely clerical or secretarial' activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead." (citations omitted)). "Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Miller v. Davis*, 267 F. Supp. 3d 961, 996–97 (E.D. Ky. 2017) (citations omitted), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019); *see also Adkins*, 393 F. Supp. 3d at 720 ("Time spent, for example, calendaring matters, serving documents, and taking dictation is non-compensable clerical work.").

The plaintiffs respond that such matters as mailing, emailing, scanning, copying, and converting documents, although admittedly administrative, are recoverable because the attorneys had an ethical obligation to keep their client apprised of the status and progress of the case. As a result, they argue, these activities are "legal in nature" and, therefore, compensable. The court is not persuaded. These activities could be performed by administrative staff. Even where they are performed by licensed attorneys, they are not compensable.

The defendants request a deduction from the amount of fees requested by the plaintiffs of

$1,145 for administrative tasks. The plaintiffs do not object on the basis that any of the items to which the defendants point are not actually administrative, and they do not quibble with the defendant's math. The court will reduce the amount of the fee award by the requested amount, to which the court adds the $40 charged for "Accounting emailed to Van" (Doc. No. 76-7, at 4), for a total reduction of $1,185 for administrative tasks.

### G. "Redundant, Excessive, and Unnecessary Fees"

The defendant also requests that the fees billed by Irion after the filing of the Amended Complaint naming Michael Robertson in his individual capacity should be reduced by 30% across the board based on the plaintiffs' lack of success on that claim; that some portion of the fees associated with the plaintiffs' motion to compel the defendant to contract with them should be reduced on the basis that this request for relief was clearly frivolous; and that the time Bristow charged for preparing and filing his *pro hac vice* motion, communicating with Irion and the clients about it, and receiving and reviewing the court's *pro hac vice* order (3.1 hours total) was clearly excessive and should be reduced.

First, the court finds that the amount of time Bristow spent in connection with the *pro hac vice* motion, which should effectively have been an administrative matter, was clearly excessive. The fees recovered in association with that task will be limited to one hour, or $200. The amount sought will be reduced by $420.

Regarding the defendant's request for an across-the-board reduction based on the degree of the plaintiffs' success, in *Hensley v. Eckerhart*, the Supreme Court confirmed that, even when a party is clearly a prevailing party for purposes of recovering fees under § 1988(b), the court must still consider the reasonableness of the total fee "in light of [the] level of success" obtained. 461 U.S. at 439. "A reduced fee award is appropriate if the relief, however significant, is limited in

comparison to the scope of the litigation as a whole." *Id.* The question here is whether reduction of some portion of the fee is warranted in light of the plaintiffs' complete lack of success against the defendant in his individual capacity—which was the entire basis for the filing of the Amended Complaint and a substantial focus of the parties' Motions for Summary Judgment—and lack of success on their Motion to Compel Compliance with Preliminary Injunction. The plaintiffs respond that their attempt to hold the defendant individually liable was in good faith and that the Motion to Compel was not frivolous.

Although the individual-capacity claim against Robertson was not "distinct in all respects" from the plaintiffs' successful official-capacity claims, it is sufficiently distinct that it required the invocation of distinct facts and the application of a distinct legal theory. And, if not frivolous, the claim was far-fetched in light of the facts at the plaintiffs' disposal. Regarding the Motion to Compel, the court cannot find that the motion was completely frivolous, but it was unsuccessful, and plaintiffs' counsel appears to have spent a substantial amount of time on it. In light of the plaintiffs' lack of success in both of these arenas, the court finds it appropriate to reduce the fees incurred following the filing of the Amended Complaint forward (beginning January 16, 2019) by 30%. The court also finds that the amount of the overall fee as awarded (see below), in light of the success achieved, is reasonable.

### H.    Non-Allowable Costs

The plaintiffs have not filed a Bill of Costs, from which the court surmises that the parties may have agreed, at least in part, on the costs recoverable by the plaintiffs. *See* L.R. 54.01(a). However, as part of their fee requests, the plaintiffs seek to recover certain costs, to some of which the defendant objects. Specifically, the defendant objects to the plaintiffs' requests to recover: (1) the $450 charged by Charles Kennedy for the use of a conference room in which to conduct

the depositions in Washington, D.C.; (2) Bristow's and Irion's *pro hac vice* fees; and (3) the fee

for Bristow to obtain a certificate of good standing from the Michigan Supreme Court.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs other than

attorney's fees are allowed as of course to the prevailing party unless some exception, not

applicable here, applies. In addition, by statute, a prevailing party may recover certain litigation

costs, if itemized on a bill of costs, including:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The plaintiffs have not responded to the defendant's objection to the costs identified above,

and the court finds that they do not fall within § 1920 and are not recoverable.

## IV. CONCLUSION

The plaintiffs Motion for Attorney's Fees requests $56,414.30 in fees and costs. For the

reasons forth herein, the motion is **GRANTED IN PART**. That part of the motion requesting the

costs identified in the motion is **DENIED**; insofar as it requests attorney's fees, the motion is

**GRANTED**, minus the amounts identified herein. The court calculates the total amount to be

deducted from that sought by the plaintiffs as follows:

$ 60 that the plaintiff concedes was inadvertently billed

$1,185 billed in connection with administrative activities

$4,578, which the court calculates is 30% of the amount billed by Bristow after the filing of the Amended Complaint on January 15, 2019, minus the hours already deducted as "administrative work," minus the excessive hours devoted to the *pro hac vice* motion (82.2 – 3.8 – 2.1 = 76.3 hours x 30% x $200)

$3,132, which the court calculates as 30% of the amount billed by Irion after January 15, 2019, minus the time already deducted for administrative work (35.9 – 1.1 = 34.8 x 30% x $300)[2]

$ 420 (2.1 of the 3.1 hours for Bristow's work on his *pro hac vice* motion)

$ 669.00 in disallowed costs

= $10,044

Deducting that figure from the $56,414.30 sought by plaintiffs, the court awards fees in the amount of $46,370.30.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

---

[2] The court's math does not correspond precisely with the defendant's. The court calculates that Irion's invoices reflect that he worked 35.9 hours after January 15, 2019, from which the court then deducts the 1.1 hours devoted to "admin" work.